Opinion delivered May 4, 1887.

---

No. 5271.

BARNEY NICHOLAS v. THE STATE.

23  317
34  202

1. RAPE.—Although the statute (Penal Code, art. 528) contains but one general definition of rape, it embraces two separate offenses; 1. rape when committed upon "a woman," and, 2. rape when committed upon "a female under the age of ten years."

2. Same—Indictment.—In order to constitute a rape of the first class, that is, rape of "a woman," it is essential that the offense was committed by the means of "force, threats, or fraud, and without the consent" of the woman. It is not necessary in such case to allege or prove that the woman raped was over the age of ten years, and if such an allegation be contained in the indictment, it need not be proved, inasmuch as the offense would be complete without the words "over the age of ten years."

2. Same.—Rape of the second class, that is, rape of "a female under the age of ten years," comprehends none of the elements of rape of the first class, e. i., force, threats, fraud, or non-consent; but carnal knowledge is, in itself, ipso facto rape.

3. Same—Joinder of Offenses.—"Duplicity in an indictment is the joinder of two or more distinct offenses in a single count,"—a pleading tolerated in criminal practice only in rare exceptional cases. Whether or not offenses are to be treated as distinct depends upon whether or not they are embraced within the same general definition, and punishable in the same manner. If they are, then they are not distinct offenses, and may be charged in a single count in the same indictment.

4. Same—Although in this State the general definition of rape covers both classes of the offense, and although the punishment is the same in each class (Penal Code, art. 524), yet the two classes are essentially distinct in their constituent elements. Quære, can the two classes of rape as defined by our statute be joined, as in this case, in a single count? But note that the defendant failed at the proper time to move to quash the indictment, and, in any event, under the general rule that, if duplicitous, an indictment will not be quashed on that ground after verdict, the defendant can not now be heard to complain.

5. Same—Charge of the Court.—If the indictment charges that the carnal knowledge was obtained by means of force, threats, or fraud, it charges a rape, whether perpetrated upon a female under or over the age of ten years, and if the indictment also contains an averment of non-age, the same may be treated as surplusage and eliminated. In this case the proof showed the female alleged to have been raped to be over the age of ten years, and the defendant requested the trial court to charge the jury, in substance, that, the indictment charging the non-age of the prosecutrix at the time of the offense, the defendant was entitled to an acquittal if the jury believed from the evidence that she was then over ten years old. The trial judge refused the special charge "because the indictment alleges that the offense was committed by means of 'force and threats' on the part of defendant, and the allegation of age of the prosecutrix or injured female is not of that descriptive character which requires corresponding proof, the State having proved force and threats." Held, that the ruling was correct, and the special charge was properly refused.

6. Rape—Fact Case.—See the statement of the case for evidence held insufficient to support a conviction for rape.

Appeal from the District Court of Freestone. Tried below before the Hon. Sam. R. Frost.

The conviction in this case was for the rape of Leona Harris, in Freestone county, Texas, on the twenty-fifth day of February, 1885. The penalty assessed against the appellant was a term of five years in the penitentiary.

Leona Harris, the alleged injured female, was the first witness for the State. She testified that she was the daughter of Martha Livingstone, but lived with the defendant (whom she denominated her step father), until her mother took her to Board Bottom. She lived with the defendant over a year, at Mr. Billy Bonner's place. The first time that defendant compelled the witness to submit to his passion was about a year before her mother took her to Board Bottom. On that occasion he induced her, by a subterfuge, to leave the cotton field in which he and she were at work, and go into a "dug out." He followed her into the dug out and ordered her to lie down, threatening to whip her if she did not obey. He then took his private member from his pants, got on her and inserted it into her private parts. He remained on the witness but a short time, and then got off voluntarily and ordered her to go to picking cotton, with the admonition that he would kill her if she ever told any one what he had done. On almost every succeeding Saturday and Sunday night, during the absence of his wife, whom witness denominated "Ma-Patsey" (to whom it will appear by subsequent testimony the witness was given), and on such Wednesday nights as "Ma-Patsey" attended church, the defendant would forcibly subject the witness to his carnal passion. Frequently, on such occasions, he would ask witness if she did not want him to get on top of her. She invariably replied in the negative, and he would then compel her to submit, frequently resorting to chastisement. The witness mentioned particularly several instances of carnal outrage practised on her by the defendant, dwelling particularly on one occasion when, on one certain Saturday, his wife ("Ma-Patsey") having gone to Pinkie Coleman's, he offered her candy to induce her to submit voluntarily. Upon her refusal he struck her with a board and made her nose bleed. The witness fled from him and he called her back into the kitchen, thinking it was the purpose of the witness to join some children and expose her bleeding nose, and he whipped her with a whip until the handle dropped off. Witness discharged no mucus of any kind from her privates on the occasion of the rape in the dug out, but on other occasions a

corrupt mass of some kind, mucus in character, exuded from her organ.

Some time after Christmas, witness's mother, Martha Livingstone, took witness from defendant's house to Board Bottom, and placed her with Ida Palm to live. Ida Palm was the first person to whom witness divulged the treatment to which she had been subjected by the defendant. Ida Palm observed witness's awkward movement in walking, and questioned her about the cause. Witness told her, and she examined witness and reported the fact to witness's mother, Martha Livingstone, who, in connection with a number of others, then made an examination of witness's person. During the week succeeding the examinations made by Ida Palm, Martha Livingstone and others, witness went to Cotton Gin to attend court, and was there examined by Dr. Thomas.

The cross examination of this witness developed few facts of importance in addition to those stated on her examination in chief. She stated that while the puncture of her privates by the defendant's male member invariably gave her much pain, and made her parts sore, it never produced bleeding. She declared again that her enforced copulation with the defendant was invariably followed by the flow of corrupt matter which would befoul her clothing and legs. She admitted that, before justice of the peace Steele, she denied that corrupt matter ever flowed from her privates after involuntary copulation with defendant. Defendant's wife washed the witness sometimes after defendant got to copulating with her. The witness stated that she continued to live with defendant after her experience in the dug out, submitting helplessly to his treatment until cotton picking was over, when she went to live with George Perkins. She was not then sore. When she returned to defendant's house from George Perkins's, after an absence of more than a month, the defendant resumed his arbitrary carnal relations with her. When witness left defendant's house to go to Board Bottom, she rode a mule, riding straddle the distance of perhaps a mile. The witness never told Rowena Sessions that riding the mule straddle produced her soreness. While living at defendant's house, the witness slept with her brother, Boney Harris, who was older than herself.

Martha Livingstone was the next witness for the State. She testified that she was the mother of Leona Harris, the prosecutrix. Leona was in her thirteenth year at the time of this trial, March,

1887. Boney Harris was the half-brother of Leona, and was sixteen or seventeen years old. He was the son of Patsey, the defendant's wife. Witness gave Leona to Patsey when she lived in Broad Bottom, and before she married the defendant. Witness took Leona from the defendant's house in February, 1885, to her own home, about one mile from Ida Palm's. Leona remained at witness's house but one night, when witness took her to Ida Palm to stay with her. En route the witness observed that the girl walked "kinder wide-legged," and spoke to her about it, but made no examination of her person. Some time afterwards Ida Palm told witness what was the matter with Leona, and the witness then took a glance at her privates. She merely observed some sores on and about her organ. Witness's examination was a hasty one, and she did not look to see whether or not the parts were or had been torn. A few days later, witness took Leona to the justice of the peace at Cotton Gin. On leaving defendant's house with witness, Leona rode off mule back, riding straddle. She rode astride but a short distance,—not above a quarter of a mile. She complained of pain produced by riding straddle, and witness put her side ways on the mule. The mule was in good order.

Ida Palm was the next witness for the State. She testified that Martha Livingstone brought Leona to her house about January 1, 1885, and while at the house made some mention of the peculiarity of the girl's walk. Mr. Arvin, who was living at witness's house, subsequently spoke of it, and witness spoke to Leona about it. Leona then told her about the defendant forcing her to cohabit with him. Witness then examined her private parts and found them swollen and infested with sores. Other women subsequently examined Leona's privates. An offensive, corrupt matter on the girl's clothes first aroused the witness's suspicion of the true state of the girl's condition. Leona had been at witness's house about three weeks when she told witness of the defendant's conduct toward her.

Maria Cox, Nancy Perry and Docia Glasgow testified, for the State, that they examined the private parts of Leona at Ida Palm's house, and found them swollen, torn, sore and honey combed with corruption. Docia Glasgow stated that Leona told her that her condition was the result of her enforced cohabitation with the defendant. She said that she had told but one person of it prior to telling witness, because defendant threatened to kill her if she told.

Ruth Armstrong testified, for the State, that she went with Martha Livingstone and escorted Leona from defendant's house to Ida Palm's about the beginning of the year 1885. Witness observed the girl's peculiar and evidently painful movements as she walked about, before leaving the defendant's house, but said nothing about it. Leona started from defendant's house on a mule behind her mother, riding straddle. She complained of that mode of riding as painful, and her position was changed to side way riding. She complained no more after her position was changed.

Doctor Thomas testified, for the State, that he examined the private parts of the girl Leona on the day after the defendant's examining trial at Cotton Gin. He found the vagina much larger than is usual in children of her size and age. Its posterior wall had been torn, leaving a scar which showed a rent or abrasion. The injury was at least three and perhaps six months old. That an instrument of some kind had penetrated the vagina was a self evident fact, but witness could not say that sexual intercourse had taken place. The disease was syphilis. At least a half dozen chancres showed in the external organ of generation. Witness could not approximate the age of the chancres, but did not think they were as old as the wound inside the vagina. The girl's condition could not have been produced by riding astride on horseback.

Cross examined, the witness stated that when he examined the girl no soreness of the parts was apparent to him. The rent described could have been produced by the friction of any foreign substance. Syphilis developes always between three and ten days. A chancre always leaves a pitted scar. Certain medical authority claimed that syphilis could be cured, but the witness did not so believe. A person so afflicted with syphilis as to impart it to a child of Leona's age would always show evidence of having had it. Leona's disease was not hereditary. The chancres on the interior of her organ were not more than three weeks old. The entrance of the male member into the organ of a female of ten or eleven would produce pain and soreness, but probably cause no laceration. It was witness's opinion that the syphilis apparent on Leona was the result of her cohabitation with a man affected with that disease.

Doctor Sneed testified, for the State, that the riding of a horse astraddle by a female, while it might produce bruises and abrasions of the membranes of the vagina, could not produce lacer-

ation. It might cause subsequent "spraddling" in the walk of the female. The puncture or penetration of the vagina of a girl of Leona's age by the organ of such a man as defendant would necessarily produce laceration, bleeding and soreness to that extent that the girl would have to complain in going about ordinary work. Syphilis always leaves an enduring and indellible sign in the shape of pitted scars. Witness had examined the defendant's penis, and as a medical expert knew that he had never had the syphilis. A male can not inoculate a female with syphilis, without having that disease himself.

The State closed.

Patsey Nicholas was the first witness for the defense. She testified that she was the wife of the defendant, and had been married to him for four years. She had slept with defendant during that time, and knew that he had no venereal disease. Witness washed Leona's clothes while she lived with witness, and often washed her person and dressed her. The witness had never discovered corrupt matter of any kind either on the girl's clothes or person. She never observed anything unusual in Leona's movements or walk. Witness frequently attended Sunday night service and Wednesday and Saturday night prayer meeting at the church near her house, during Leona's residence with her. She sometimes took Leona with her, and at other times left her with her mother-in-law, living near. Leona was the child of the witness's first husband by another woman.

Cross examined, the witness stated that Leona's mother took her from witness's house early in January, 1885. As often as witness, going to church at night, left her husband at home, she took Leona either to church or to her mother-in-law's. She never left her husband and Leona alone in the house at night. She may have left Leona, defendant and Boney Harris together at night. Witness testified on the examining trial that when she went to church during the fall and winter of Leona's residence with her, her husband always went with her, but she had reference only to church services during the protracted meeting of that year.

Delia Perkins, the defendant's sister, testified, in his behalf, that Leona lived at her house during the months of October and November after she claimed to be ravished. She made no complaint to witness of the defendant or other person mistreating her. Witness saw nothing wrong about her walk, nor did she ever see any corruption on her clothes.

W. E. Bonner testified, for the defense, that he had known defendant since the close of the civil war, and had had him in his employ for the past ten years. He had seen a great deal of defendant, and had never known him to be afflicted with syphilis or other venereal disease. Defendant's reputation for chastity was good.

The material part of Dr. Haggard's testimony was that the penetration of the female organ of a girl of Leona's age by the organ of such a man as defendant would produce great pain, soreness and prostration. While it was possible, it was wholly improbable that Leona, if raped by defendant, could have immediately resumed her usual avocations.

Justice of the Peace Steele testified that on the defendant's examining trial before him, Leona said nothing about the rape upon her in the dug out. She mentioned Wednesday and Saturday nights as the usual times of her outrage by defendant. On his cross examination, witness said that he remembered nothing, and the record showed nothing, indicating that Leona was questioned on the examination before him about the first assault upon her person by the defendant. Otherwise, the testimony of Leona on this and the examining trial was about the same. The county attorney testified substantially as did the witness Steele.

The defense closed.

The State introduced the testimony of Patsy Nicholas, as reduced to writing on the examining trial. On that trial she testified that her husband always went with her when she went to church, during the fall and winter of 1884-5.

*Kirven, Gardner & Etheridge,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. This appeal is from a judgment of conviction for rape. As stated in the indictment, the charge, omitting formal parts, is that the accused "did then and there unlawfully and feloniously, in and upon one Leona Harris, a female person and under the age of ten years, make an assault violently and feloniously, and did, then and there, by force and threats, against her will and without her consent, ravish, rape and carnally know her, the said Leona Harris, contrary," etc.

Our statute declares that "rape is the carnal knowledge of a

woman without her consent, obtained by force, threats or fraud, or the carnal knowledge of a female under the age of ten years, with or without consent, and with or without the use of force, threats, or fraud." (Penal Code, art. 528.) Now, whilst the statute gives this single definition of rape, it is evident that there are two classes of facts, each of which constitutes a rape, embraced within the statute, to wit, rape when committed upon "a woman," and rape when committed upon "a female under the age of ten years." Under the first class, that is, rape upon "a woman," it is essential that the offense should have been committed without the consent of the woman, and by "force, threats, or fraud." But it is not essential in such a case to allege or prove that the woman ravished is over ten years of age. (State v. Storkey, 63 N. C., 7.) And as a rape may be committed upon a woman of any age, should there be an averment that the injured person is "over ten years," it would be entirely unnecessary, and would not be a constituent of the crime, and need not be contained in the indictment, or, if inserted, need not be proved; because the offense is complete without these words. (Swinney v. The State, 8 Smedes & Marsh., 576, 46 Miss., 501.)

Mr. Bishop says: "The indictment for rape need not allege the age of the female, or state that it was over ten years; nor need the age be proved." (2 Bish. Crim. Proc., 3 ed., sec. 954; Moore v. The State, 20 Texas Ct. App., 275.)

With regard to the other class, to wit, rape upon a "female under the age of ten years," none of the essential elements of rape as it is constituted when committed upon a woman are required either to be alleged or proved;—that is, the essential elements of force, threats or fraud, and want of consent. None of these elements are required, because the carnal knowledge of a female under ten years of age is in itself, *ipso facto*, rape.

Thus it will be seen that whilst the general definition of rape covers both classes of the offense, and whilst the punishment for both offenses is also the same under our statute (Penal Code, art. 524), yet the two classes are essentially distinct in their constituent elements. Can these two classes of this offense be joined, as has been done in the case before us, in a single count in the same indictment. This depends, it seems, upon the question as to whether or not the two offenses are separate and distinct offenses. "Duplicity in an indictment is the joinder of two or more distinct offenses in one count." As a general rule, this the criminal law never permits, though there may be some rare

exceptional cases.     (State v. Dorsett, 21 Texas, 656; State v. Randle, 41 Texas, 292; Weatherly v. The State, 1 Texas Ct. App., 643; 1 Bish. Crim. Proc., sec. 432.)

It seems that whether or not offenses are to be treated as separate and distinct specific offenses, depends upon whether or not they are embraced within the same general definition and punishable in the same manner.     If they are, then they are not distinct offenses, and it is permissible to unite them in one count in the same indictment. Discussing the subject, Mr. Bishop says: "It is common for a statute to declare that if a person does this, or this, or this, he shall be punished in a way pointed out.     Now, if in a single transaction he does all the things, he violates the statute but once, and incurs only one penalty.     Yet he violates it equally by doing only one of the things.     Therefore an indictment upon a statute of this kind may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction "and" where the statute has "or," and it will not be double; and it will be established at the trial by proof of any one of them."     (Bish. Crim. Proc., sec. 436; State v. Smith, 24 Texas, 285; People v. Book, 16 N. Y. Weekly Dig., March 9, 1883.)

In The State v. Edmundson, 43 Texas, 162 (quoting from The State v. Barker, 63 N. C., 276), it is said: " While it is important that the prisoner be sufficiently informed of the charge against him, so that he may make his defense, yet he can not complain that he is informed that if he did not do it in one way he did it in another, both ways being stated, and it is not to be tolerated that the crime is to go unpunished because the precise manner of doing it is in doubt."     When offenses are several in their nature, and yet of such a character that one of them, when complete, necessarily implies the other, there is no such repugnancy as to make their joinder improper.     (Randle v. The State, 41 Texas, 292.)

These rules with regard to pleading seem to be well settled. We are of opinion, however, that where the difference as to the facts in the two classes of offense is so radical as in the two classes of rape, dependent upon the age of the injured female, if the pleader intends to prosecute for both classes, the better practice, certainly, would be to present each of the classes in separate counts in the indictment.     But in this case there was no motion made to quash the indictment for duplicity, and, such being the case, the rule is that, if duplicitous, the indictment

will not be quashed on that ground after verdict. (Coney v. The State, 2 Texas Ct. App., 62; 1 Bish. Crim. Proc., 3 ed., sec. 443.)

On the trial of this case the evidence established that, at the date of the alleged offense, the prosecutrix was over the age of ten years. In view of this testimony the defendant's counsel requested the court to instruct the jury as follows: "You are instructed that in this case the defendant stands charged by indictment with the offense of rape upon a child under the age of ten years, and you are further instructed that if you believe from the evidence that Leona Harris, at the time of the commission of the offense, if any, was over the age of ten years, then and in that event you will find the defendant not guilty." The learned trial judge explains his refusal of this special charge as follows: "The above special instruction is refused because the indictment alleges that the offense was committed by means of 'force and threats' on the part of the defendant, and the allegation of age of the prosecutrix, or injured female, is not of that descriptive character which requires corresponding proof, the State having proved force and threats."

The question arises, was the view taken by the court correct? Having alleged the age to be under ten years, was the State compelled to prove that the prosecutrix was under ten, and, the proof showing that she was over ten, was the variance between the allegation and proof material and fatal to the conviction? It is clear from the allegation in the indictment that, if we eliminate the words "and under the age of ten years," a sufficiently specific and distinct statutory offense of rape is charged. These words can be treated as surplusage and eliminated if they are not essential to the descriptive identity of the offense. The rule is: "Whenever there is a necessary allegation which can not be rejected, yet the pleader makes it unnecessarily minute in the way of description, the proof must satisfy the description as well as the main part, since the one is essential to the identity of the other." (Warrington v. The State, 1 Texas Ct. App., 168; Withers v. The State, 21 Texas Ct. App., 210, and authorities there cited.)

As we have before remarked, we have but one statutory definition of rape. This statute, however, embraces two classes, dependent upon the facts or elements entering into them, viz., rape upon "a woman," and rape upon "a female under ten years of age." When the offense is alleged to have been committed

upon "a female under ten years of age," it is unnecessary to allege that the carnal knowledge was obtained by means of "force, threats or fraud, and without her consent," because the carnal knowledge of itself constitutes the offense in such a case, and the allegation and proof of age is the only essential element in such an offense. If, on the other hand, the indictment charges a rape committed by "force, threats or fraud, and without consent," then, indeed, such an allegation would be sufficient also to charge a rape committed upon a female, no matter whether under or over ten years of age. But in such a case it would be essential to the validity of a conviction to prove that it was committed "by force, threats or fraud, and without consent," even though the injured female was under ten years of age. (Moore v. The State, 20 Texas Ct. App., 275.) An allegation of age, then, only becomes essential when it is proposed to show a carnal connection with a female under ten, independent of the other statutory elements constituting the offense. In this aspect of the crime, only, age becomes an essential element of the offense.

Mr. Bishop says: "Though it is a separate offense to have carnal knowledge of a consenting girl under ten years of age, still it is rape to force her, the same as if she was over ten.") (2 Bish. Crim. Proc., sec. 954.)

A similar question to the one under consideration was ably discussed in Mobley v. The State, 46 Mississippi, 501, and the court says: "As already stated, a woman of any age may be the subject of this crime. If the female be under ten, this fact might be a defense upon the trial under an indictment for the substantive offense; but in the latter case, as we have before shown, the prosecution need neither aver nor prove the age. Proof of the carnal knowledge of a female, forcibly and against her will, sustains the charge, and hence the age, even if averred, need not be proved (Swinney v. The State, 8 Smedes & Marsh., 576), because not an ingredient of the crime. This case is unlike those where an unnecessary averment becomes material, as a description of the person of the accused, the place or locality of the crime, or the property stolen, as in Dick v. The State, 30 Mississippi, 631, John v. The State, 24 Id., 569, and the cases therein cited, from which the one at bar is wholly distinguishable. In cases like those, the unnecessary having become material, it must be sustained by proof, though in such cases slight proof of those averments is sufficient; while, in the case at bar,

the age is in no way material, or in any way identified with the crime. In The State v. Anderson, 19 Missouri, 241, which was the trial of a negro upon an indictment for an attempt to ravish a white female, the jury were permitted to find the color and race of the accused, and the sex of the prosecutrix, from seeing these parties on trial, and proof that the accused was a slave, and this was sustained on error; but the rule therein adopted need not be invoked in the case at bar, even if approved."

In O'Meara v. The State, 17 Ohio State Reports, 518, it is stated that "the age of the female is, therefore, immaterial, except so far as it may tend to show that the act was forcible and against her will. It is mere matter of evidence, and not of allegation, in the indictment. It is only necessary to allege the age when the indictment is for carnally knowing and abusing with the child's consent." (Greer v. The State, 50 Ind., 276; s. c., 1 Amer. Crim. Rep., Hawley, 643.)

Now if age is a non-essential element where force, threats or fraud, or non-consent are relied upon, it would seem that an allegation of age would not in any manner be descriptive of an offense thus charged, and could thus properly be treated as surplusage. And if age is immaterial where the crime has been committed by force, threats or fraud and without consent, certainly there can be no variance in the proof where the age has been unnecessarily alleged, and the other essential elements have been established as charged in the indictment. We are of the opinion that the court did not err in the charge given, nor in refusing the defendant's special requested instruction as above set out.

We do not, however, believe the evidence in this case sufficiently establishes the guilt of this defendant. When examined by the medical expert, the prosecutrix was found to be afflicted with syphilis, and appeard to have been so afflicted for about three weeks. Doctor Sneed said that he had examined defendant, and he found no indications that the defendant had ever had syphilis. But, independent of this strong negative testimony, the other evidence in the case fails to impress us with that conclusive force and cogency requisite to establish satisfactorily the crime of which defendant has been found guilty.

Because the evidence is insufficient to support the verdict and judgment, the judgment is reversed and the cause remanded.

Opinion delivered May 4, 1887.    *Reversed and remanded.*