## ANA REUM v. THE STATE.

### No. 3162.   Decided December 13, 1905.

**1.—Abortion—Indictment—Different Counts.**

See opinion for indictment containing several counts charging the offense of abortion held sufficient.

**2.—Same—Defective Count Cured by Subsequent Count.**

Where in an indictment for abortion there are several counts, one of which may be defective, such defect was cured by an allegation in a subsequent count.

**3.—Same—Duplicity—Means of Accomplishing Crime.**

Where an indictment for abortion charged several means of accomplishing the same result in the same count, the same is not duplicitous.

**4.—Same—Means Used Unknown to Grand Jury.**

Where in an indictment for abortion, there was contained a general count in the indictment that the means used were unknown to the grand jury, and said indictment contained counts alleging the means used; and the evidence upon trial showed that the means used were at least partially known to the grand jury, and defendant went to trial on all the counts of the indictment, a conviction will not be disturbed.

**5.—Same—Election of Counts—Defective Counts—Good Counts—Conviction.**

On a trial of abortion upon an indictment containing several counts, some of which were probably defective, and others were good, all covering the same ground, alleging the same offense by different modes or means, and no possible injury could result to defendant in permitting the trial to proceed on the bad as well as the good counts, no election was necessary and a conviction can be referred to and sustained on any good count.

**6.—Same—Bill of Exceptions—Harmless Error.**

On a trial for abortion where it was not shown in the bill of exceptions that the questions asked and the answers given were calculated to injure defendant's right, or tended to prove any material facts in the case, there was no error.

**7.—Same—Charge of Court—Definition of Abortion.**

See case for charges of the court which correctly define the term of abortion.

**8.—Same—Charge of Court—Means Used.**

See opinion for a charge of the court held to be sufficient and correct in submitting to the jury the means used, calculated to procure an abortion, to wit: by the use of drugs and the application of a metallic instrument.

**9.—Same—Charge of Court—Harmless Error.**

Where on trial for abortion the jury could only predicate their verdict on the testimony with reference to the application of a metallic instrument to the prosecutrix, it was harmless error for the court to charge on the question of external violence.

**10.—Same—Charge of Court—Reasonable Doubt.**

Where on trial for abortion the jury were sufficiently instructed that if they had a reasonable doubt whether an abortion was produced by the means charged in the indictment, or that the prosecutrix was pregnant, to acquit, there was no error to refuse special charges on these subjects.

**11.—Same—Evidence—Turpentine—Special Charge.**

Where on trial for abortion the physicians testified that it would have had no effect on the uterus of a female to take turpentine, but that the same would act on the kidneys only, there was no error in failing to charge on the effect of turpentine taken by prosecutrix.

**12.—Same—Jury and Jury Law—Householder—Freeholder.**

Because of the fact that a juror sat on a case charging a felony, and that he was neither a householder nor a freeholder, this would not vitiate the verdict; especially where the juror answered on his voir dire that he was a free-holder or house-holder, and where such fact was not controverted by evidence on defendant's motion for new trial.

·Appeal from the District Court of El Paso. Tried below before Hon. James R. Harper.

Appeal from a conviction of abortion; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

The court in its general charge instructed the jury as follows: 5— "By the word abortion is meant the act of miscarriage or producing a child from the mother before the natural time, with premeditated or intentional design to prevent the birth of a natural child.

6—"By the term producing a child before the natural time is meant, at any time from gestation or the moment of pregnancy, to the time, when the foetus is perfectly formed.

7—"And to cause or produce an abortion is to cause or produce this premature bringing forth of the foetus from the womb of a pregnant woman."

*M. W. Stanton,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an abortion, and her punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

The evidence shows substantially that Ana Reum was a female midwife or physician, living in El·Paso, and that the prosecutrix, Julia Hudson, called on her at her office, and complained that her menses had been stopped about two months; and asked appellant if she did not think she had a cold. Appellant informed her she would have to examine her to see. After the examination, she told her that she was pregnant, and she would have to perform an operation on her, for which she would charge her $50. ·Prosecutrix told her she did not have that much money. Appellant then told her she would do it for $45. Prosecutrix paid her $29 down. It seems that appellant either at that time or the next day, gave her some medicine. Witness states that when she made the contract she gave her some medicine; gave her something in a glass and some pills to take. The medicine in the glass looked like something green. Also gave her some little white

pills, and some little round pills. Told her to take two at once, and told her to take the round white pills one every three hours. She took the same as directed. After making the contract, she told her to come back the next morning. Prosecutrix went back the next morning, and appellant performed the operation on her. Prosecutrix states that appellant used two instruments: one was something like a curling iron, but did not have a handle to it: seemed to be iron, and was straight; and the other had a thing like a screw on it. Appellant put it in prosecutrix, and turned it around; she told her it hurt her stomach. Appellant told prosecutrix she was performing an operation on her. She told prosecutrix that she had put the instrument into her womb; told her that something might pass from her that evening; that if anything did not pass to come back the next morning. Prosecutrix went back the next morning, and told her that nothing had passed. Afterwards, about 8 o'clock that evening, a chunk of blood passed from prosecutrix. The clot of blood was about the size of a hen egg; and prosecutrix threw it into the wash basin, and afterwards emptied it into the toilet. She afterwards became sick, and telephoned for appellant to come. Subsequently Dr. Anderson was sent for. He came and made some examination of her. After this appellant came and was informed by prosecutrix that Dr. Anderson had been there, and she told prosecutrix not to send for him any more; that he did not like her and would likely get them into trouble. Appellant visited prosecutrix several times while she was sick. Subsequent to this prosecutrix was removed to the hospital, and was there attended by Dr. Anderson and Dr. Krauss. They examined her, and testified that they washed out or cleansed her private parts, and took therefrom a part of an afterbirth. That prosecutrix was threatened with septic poison on account of such foreign substance being in her uterus. Both of these witnesses testify that there was no question that the foreign substance was a part of the after-birth, which indicated unmistakably pregnancy. Appellant introduced Dr. Edgar, who testified that he examined prosecutrix, and she was not pregnant. This is a sufficient statement of the testimony to discuss the question raised.

The indictment contains six counts. Appellant contends that most, if not all are defective. The first count charges that appellant unlawfully and designedly administered to Julia Hudson, a pregnant woman, with her consent, a certain drug and medicine, calculated to produce an abortion, and with the intent then and there on the part of appellant thereby to cause and procure, and which did then and there cause and procure the abortion and miscarriage of her, the said Julia Hudson, of a child, wherewith she was then and there so pregnant. The second count charges that appellant designedly, etc., administered to Julia Hudson, then and there a pregnant woman, with her consent, a drug and medicine calculated to produce an abortion, and did then and there by means of said drug and medicine procure an abortion of the said Julia Hudson. Both of these counts are essentially similar.

Appellant contends that said counts are defective, because they do not state that said Julia Hudson was pregnant. In this appellant was evidently mistaken. It was also contended said counts are defective, because they do not name or describe the medicine, showing it was an abortifacient. The counts do charge that said drug and medicine was calculated to produce an abortion. This seems to be in accord with the authorities in this State. Watson v. State, 9 Texas Crim. App., 237; Cave v. State, 33 Texas Crim. Rep., 335. These were both cases of an attempted abortion, but we can see no difference in principle between the case of an attempt and one of actual abortion, as to the allegation of the means used. We think each of said counts sufficiently alleged that by the means used appellant did procure an abortion on said Julia Hudson. It was not necessary to further define or allege an abortion.

The third count charges that appellant made an assault on prosecutrix, and did then and there designedly, etc., with the consent of the said Julia Hudson, thrust and force into the womb and private parts of said Julia Hudson a certain metallic instrument, calculated to produce an abortion, and did then and thereby procure an abortion of the said Julia Hudson. This count is challenged because of its failure to name or further describe the said metallic instrument. It occurs to us that the same rule would be applicable as to a description of the means used in this count as in the two preceding counts. However, if there was any difficulty on this subject the fourth count cures it by alleging that the name and character of said instrument was unknown to the grand jurors, and could not be further described. An examination of the proof discloses this to be true. In our opinion, it would make no difference whether the former count was good in this respect or not, it was cured by the next count. The fact that the fourth count was good in this respect would remove any possible injury to appellant, even if it be conceded that the third count was defective.

The fifth count charges that appellant designedly, etc., by the use of drugs and medicines administered to the said Julia Hudson, and by violence then and there internally and externally applied by said appellant in and upon the said Julia Hudson, who was then and there a pregnant woman, with the consent of the said Julia Hudson, did procure an abortion of the said Julia Hudson. We do not believe this count is duplicitous, because it charges several means of accomplishing the same result in the same count. Moore v. State, 37 Texas Crim. Rep., 552.

The sixth and last count charges, in general terms, that appellant did then and there designedly, etc., by the use of means unknown to the grand jury, procure an abortion of Julia Hudson, then and there a pregnant woman, with the consent of the said Julia Hudson. This count is very general in its terms, as stated. We are not prepared to say that if the means used were absolutely unknown to the grand jury

and could not have been ascertained, and it could be proven that some means were used and an abortion procured, that the count would not sustain the conviction. However, the proof showed that the means used were at least partially known to the grand jury, and the same are alleged in other counts. The fact that this count is general in its terms, and that appellant went to trial on it, as well as the others, could not work any injury to appellant.

In Moore's case, supra, it was held: "The State will not be required to elect between counts: (1) Where the same transaction is embraced in any number of distinct counts. (2) Where the same transaction or offense is charged in different counts, and each count alleges a different mode or means of doing the same act constituting the same offense. (3) Distinct ways of doing the same thing, not antagonistic to each other, may be alleged conjunctively in the same count; and, in such case, there can be, in the nature of things, but one count, and no election; and the prosecution has the right to proceed upon all the means alleged in the count." In said case it was held, "Where an indictment for abortion contains different counts, alleging different means by which the offense was committed, e. g. that it was committed by drugs and by an instrument; and the evidence is, that both means were used in producing the abortion, the State cannot be required to elect between the counts, and, it is proper for the jury, in arriving at their verdict, to consider the proof under both counts."

Now, in this case, even if it be conceded that some of the counts are defective, yet there are good counts in the indictment, covering the same ground; and no possible injury could result to appellant in permitting the trial to proceed on the bad as well as the good counts, as on conviction the same can be referred to any good count.

Appellant reserved the following bill of exceptions: "Prosecuting witness, Julia Hudson, was testifying on behalf of the State, and stated that Dr. Anderson did not say anything; he did not examine me at the hospital. Q. Never did examine you? Did he ask you about the nature of your sickness? A. He asked me had I been sick. Q. Did he ask you at this particular time? I just want to know if he asked you? Did he ask you what was the matter with you? What had happened? A. Yes, sir, he asked me." Appellant objected on the ground that the questions were leading and suggested the answer, and the testimony did not tend to prove any material fact in the case, and was not admissible for any purpose. The fact that it did not tend to prove any material fact in the case, unless it was shown to be otherwise injurious to appellant, would not constitute cause for reversal. It will be seen that the witness did not make any statement of any fact of a character calculated to prove injurious to appellant. This same witness was examined as to what occurred between Dr. Lewis and herself. We make the same observations with reference to this testimony as to that contained in the former bill. Nothing of an injurious nature was elicited.

In her motion for new trial appellant assigns a number of errors in the charge of the court, and to the failure of the court to give certain special requested instructions. We can find no fault with the definition of the term "abortion" given by the court, in paragraphs 5, 6, and 7.

Exception is taken to the eighth paragraph of the charge, on the ground that the court, in submitting the issues to the jury on which they were authorized to convict appellant, stated, among other things, if they believed appellant gave Julia Hudson any drug or medicine, or used towards the said Julia any violence external or internal, or that appellant thrust or forced into the womb or private parts of the said Julia Hudson, a certain metallic instrument, calculated to produce an abortion, and did then and there by any or all of said means produce an abortion on the person of Julia Hudson, and that said Julia Hudson, was then and there a pregnant woman, and if they should so believe beyond a reasonable doubt, to find appellant guilty. The contention is that there was no proof of any drug or medicine given for the purpose of producing an abortion. From the statement of the case hereinbefore made, it will be seen that medicines were given prosecutrix by appellant, either the day before, or in conjunction with the application of the metallic instrument. Unquestionably the insertion of the metallic instrument was for the purpose of producing an abortion, and while nothing was said at the time as to the effect of the medicines, yet evidently they were given in aid of the main purpose. The court did not err in submitting this issue: especially in conjunction with the use of the metallic instrument.

It is further insisted that there is no evidence of any external violence used. To this we agree. But we do not believe that the charge in this regard was calculated to work an injury to appellant. True, we have held that the court should not charge on a phase of case not presented in the testimony; but we do not believe the jury could have been misled to the effect that there was any testimony whatever on this issue. They were not confused by the charge as given. The testimony was short and easily understood. Unquestionably they predicated their verdict solely on the testimony with reference to the operation performed on prosecutrix by appellant with the metallic instrument.

In the ninth paragraph of the court's charge, the jury were sufficiently instructed, if they had a reasonable doubt whether an abortion was produced on Julia Hudson by the means charged in the indictment, to acquit defendant. Therefore it was not required to give appellant's fourth special instruction on this subject. It was also sufficiently charged that before they could convict appellant, they must believe beyond a reasonable doubt that Julia Hudson was pregnant.

We do not believe the testimony as to the turpentine taken by prosecutrix, as explained by the physician, was of that character as required a charge to the jury. The physicians say that it would have had no effect on the uterus, but would act on the kidneys.

We have examined the other special charges refused, and we do not

believe any of them were called for. The court's charge covered all the essential phases of the case, both for the State and appellant.

In motion for new trial appellant raises an objection to certain jurors, who sat in the case. The affidavit is made solely by appellant, and is in very general terms. She charges that said jurors were not householders in El Paso County nor freeholders in the State of Texas; and that they answered on their voir dire that they were. She does not show her means of information, nor did she offer any testimony to prove the fact asserted by her. In order to raise the issue properly she should have adduced evidence to prove the facts asserted. We do not understand the rule to be that because a juror is not a freeholder or householder, the fact that such juror sat in the case will vitiate the verdict. There being no error in the record, the judgment is affirmed.

*Affirmed.*