stock sanitary commission of Texas was insufficient, and failed to charge an offense.

Appeal from Cherokee County Court; **J. J. Bolton,** Judge.

Jim Wiggins was convicted of violating the tick law, and he appeals. Reversed, and prosecution ordered dismissed.

Norman, Shook & Gibson, of Rusk, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

LATTIMORE, J. Appellant was convicted in the county court of Cherokee county of violating the tick law, and his punishment fixed at a fine of $1.

[1] When the statute names certain acts as penal when done without certain accompaniments, an indictment charging such violation of the law must negative the existence of the predicate conditions. Holtzgraft v. State, 23 Tex. App. 404, 5 S. W. 117; Boubel v. State, 87 Tex. Cr. R. 360, 221 S. W. 290, sustain the proposition that an indictment charging that one has hunted in the inclosed and posted lands of another must allege that it was without the consent of the owner, the proprietor, or the agent in charge, and it is not sufficient that such hunting was without the consent of the owner. In Lantznester v. State, 19 Tex. App. 320, it is held that, when charging one with selling or giving liquor to a minor without the consent of the parent or guardian, as forbidden by statute, the indictment must allege that such gift or sale was without the consent of the parent or guardian, and that it is not sufficient to say that it was without the consent of the parent. This same holding appears in State v. Emerick, 35 Ark. 324.

In Meier v. State, 57 Ind. 386, it is held that the indictment must negative the possession of any character of license under which the sale charged to have been made was permitted; the law forbidding such sales without having one of several named licenses. This holding is approved in Henderson v. State, 60 Ind. 296, and O'Brien v. State, 63 Ind. 242. To the same effect is the holding in State v. McBride, 64 Mo. 364. In State v. Pitzer, 23 Kan. 250, it is held that, where sales are only allowed in case licenses be had of certain kinds, the indictment must negative the possession of any such licenses. In Newman v. State, 63 Ga. 533, appears the statement that an indictment is bad, if admitting the truth of all the allegations, the accused may still be innocent under the law involved. This is approved in Thompson v. State, 37 Ark. 408, where one was prosecuted under a law forbidding a sale without a prescription given by a graduate physician or a regular practitioner of medicine. The

court held bad an indictment which only alleged a sale without prescription given by a graduate physician. See, also, State v. Haden, 15 Mo. 311; Davis v. State, 39 Ala. 521.

[2] In the tick eradication statute involved in the instant prosecution, viz., section 11, c. 60, Acts 35th Legislature, Regular Session Vernon's Ann. Pen. Code Supp. 1918, art. 1284j), it is provided that no person shall drive, etc., cattle, etc., located in quarantine territory into any other quarantine territory, etc., without the written permit of an inspector of the live stock sanitary commission of Texas or the United States Bureau of Animal Industry. To legally charge one with violating this law the state's pleading should allege that the moving of the animal was without the written permit of either an inspector of the live stock sanitary commission of Texas, or of the United States Bureau of Animal Industry. This the information in the instant case did not do; it being only alleged that appellant moved his cattle without obtaining a written permit from an inspector of the live stock sanitary commission of Texas. In refusing to quash the information on the ground that it failed to charge an offense, the learned trial judge fell into error. The case being disposed of under this view, it will not be necessary to discuss the other errors complained of.

The judgment will be reversed and the prosecution ordered dismissed.

---

### GAULT v. STATE. (No. 8142.)

(Court of Criminal Appeals of Texas. Oct. 15, 1924. Rehearing Denied March 4, 1925.)

**1. Indictment and information ⏤125(19)— Several means of committing same offense may be charged in count.**

Several statutory means of accomplishing same result, subject to same penalty, may be charged in same count of indictment.

**2. Indictment and information ⏤110(31)—Indictment for keeping "building, room and place" for manufacture of liquor held not indefinite.**

Indictment in language of Vernon's Ann. Pen. Code Supp. 1922, art. 588¼oo, for keeping "building, room and place" for manufacture of intoxicating liquor, *held* not indefinite in not stating whether premises were building, room or other kind of place.

**3. Intoxicating liquors ⏤236(19)—Possession of premises and use of still in manufacturing whisky held sufficiently shown.**

Evidence *held* sufficient to connect defendant with possession of premises on which still and whisky were located, and warrant jury's conclusion that apparatus was that used in manufacturing whisky, which defendant admitted his readiness to sell.

---

⏤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Intoxicating liquors ☞137—Lease not conclusive against state's right to prosecute for keeping place for manufacture.**

That particular premises, on which whisky was located, were not specifically included in defendant's lease would not be conclusive against right to prosecute, under Vernon's Ann. Pen. Code Supp. 1922, art. 588¼oo, for keeping place for manufacturing intoxicating liquor.

**5. Intoxicating liquors ☞233(1) — Statement that prosecuting witness desired to purchase whisky and defendant's reply held relevant.**

Statement of one present, when defendant showed whisky on premises under his control to prosecuting witness, that latter wanted to buy whisky, and defendant's reply that he had plenty and wanted certain price, *held* relevant in prosecution for keeping place for manufacture of intoxicating liquor, as tending to show possession and guilty knowledge of presence of whisky.

**6. Intoxicating liquors ☞233(2)—Testimony articles found were usable for manufacture of liquor held admissible.**

Testimony that still and equipment, found on defendant's premises and exhibited to jury, were usable for manufacture of intoxicating liquor *held* admissible in prosecution for keeping place for manufacture of intoxicating liquor.

On Motion for Rehearing.

**7. Intoxicating liquors ☞137—Proof of defendant's title to, and exclusive control of, place of manufacture unnecessary.**

One accused of keeping place for manufacture of intoxicating liquor need not be shown to have had title to nor exclusive care, control, or management of premises.

**8. Intoxicating liquors ☞236(19)—Evidence held to sustain conviction of keeping place for manufacture of liquor.**

Evidence *held* sufficient to take question to jury, and sustain conviction, of keeping place for manufacture of intoxicating liquor.

Appeal from Criminal District Court, Williamson County; James R. Hamilton, Judge.

Jim Gault was convicted of keeping place for manufacture of intoxicating liquor, and appeals. Affirmed.

J. F. Taulbee, of Georgetown, for appellant.

. Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

MORROW, P. J. The indictment charged that the appellant "did then and there unlawfully and knowingly keep, and was then and there interested in keeping, certain premises, a building, room and place, * * *" to be used for the purpose of manufacturing intoxicating liquor.

The sufficiency of the indictment is challenged upon the ground that it is indefinite in failing to advise whether it was intended to prove that the premises kept was a building, room, or other kind of place. The indictment used the language of the statute contained in article 588¼oo, Vernon's Ann. Pen. Code Supp. 1922.

[1] We understand it to be permissible to charge in the same count the several means named in the statute of accomplishing the same result, which is penalized under the same penalty. Coney v. State, 2 Tex. App. 62; Moore v. State, 37 Tex. Cr. R. 552, 40 S. W. 287; Burt v. State, 38 Tex. Cr. R. 440, 40 S. W. 1000, 43 S. W. 344, 39 L. R. A. 305, 330; Reum v. State, 49 Tex. Cr. R. 128, 90 S. W. 1109; Pruitt v. State, 53 Tex. Cr. R. 316, 109 S. W. 171; Todd v. State, 89 Tex. Cr. R. 101, 229 S. W. 515.

[2] It is conceived that the criticism of the present indictment is not sound. The statute, by the same penalty, denounces as an offense knowingly keeping any premises for the purpose of manufacturing intoxicating liquors, whether the premises be a building, room, or place.. No reference to the authority has been furnished condemning the form of the present indictment, and it is believed that it is not subject to the fault mentioned. So far as the writer is aware, we have had but one occasion to discuss an indictment under this statute, and that was in the case of Morris v. State, 93 Tex. Cr. R. 100, 245 S. W. 915, but that case does not touch the immediate question here under consideration.

[3] The appellant resided on a farm which had formerly been known as the Lindsay farm. It had been divided. A part of it was owned by a relative of the appellant named Gault. There was a division fence between the Lindsay place and the Gault farm. As we understand the record, the appellant was cultivating a part of the farm belonging to his relative, and resided in a separate house, which was inclosed by a yard fence. He rented part of the cultivated land. The pasture seems not to have been rented by him. In the pasture or uncultivated part of the land, in a thicket, there was found a still, some mash, and some whisky in half-gallon jars. Circumstances indicate that the still had been operated there. If we correctly understand the statement of facts, prior to the discovery of the still, the premises upon which the still was found were visited by the witness Yates, who seems to have been acting in the interest of the sheriff of the county. He conversed with the appellant, who led him to a point which the witness described as 75 or 100 yards from the Lindsay house. The appellant there pointed out to the witness eight or ten half-gallon fruit jars of whisky. Brown,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

who was present, told the appellant that the witness Yates wanted to buy some whisky. Appellant said that he had plenty and wanted $15 for it. Yates did not see any barrels or the still. His visit to the premises was made in the nighttime. On searching the premises soon after the visit of Yates, there was found in the thicket a still and some fruit jars containing whisky. These were in a thicket variously estimated by the witnesses as being from 125 to 300 yards from the house occupied by the appellant.

J. H. Gault, father of the appellant, testified that the still was not upon the premises with his knowledge or consent.

There was some conflict in the evidence touching the nearest house to the still. As we understand the record, the still was found upon the Gault farm, and not upon the Lindsay farm. The circumstances are regarded sufficient to identify the appellant with the possession of the premises upon which the still and whisky were located. His admission to the witness Yates that he had a quantity of whisky for sale, together with the circumstances touching the locality in which it was found, were such, we think, as warranted the jury in concluding that the apparatus which was afterwards found was that used in manufacturing the whisky which the appellant was ready to sell to the witness Yates, and which was under his control.

[4] Whether the particular premises upon which the whisky was located were specifically included in the lease of the appellant would seem not to be conclusive against the state's right to maintain the prosecution under the statute in question.

[5] The statement of Brown to appellant and his reply mentioned above were relevant as tending to show possession of the product of the still, as well as guilty knowledge of its presence. The bill, as qualified, shows the whisky at the time of the remarks mentioned was on the premises under the control of the appellant.

[6] There was brought into the courtroom and exhibited to the jury the still and equipment found upon the premises described, and testimony was received to the effect that the articles were usable for the manufacture of intoxicating liquor. The receipt of this testimony is deemed proper, as it was of weight in showing the purposes for which the premises with which the appellant was identified were kept. In Newton's Case, 94 Tex. Cr. R. 383, 251 S. W. 240, a like procedure was sanctioned by this court.

Deeming the evidence sufficient to support the verdict, and finding no error in the procedure, the judgment is affirmed.

### On Motion for Rehearing.

LATTIMORE, J. [7] Apparently appellant's motion is based on the supposed failure of the testimony to show him in control and management of the premises upon which the still, mash, and other equipment for the manufacture of intoxicating liquor were found. We do not conceive it to be the requirement of the law that one accused of this offense be shown to have the exclusive care and control or management of such premises. Nor do we believe it necessary to show that the title to the property was vested in the accused.

[8] In the instant case it is shown without dispute that appellant lived on a place belonging to his father. According to the state's testimony, the material, paraphernalia, etc., for the making of intoxicating liquor were found in the same pasture in which appellant's house was located, and at a distance of approximately 125 to 150 yards from his house. The officers followed a path leading to the place where same was found, going from the house of appellant. The find was made early one morning. Other testimony of the state showed that late in the afternoon before appellant took a witness to the same premises and showed him a quantity of manufactured liquor which he wished to sell witness, naming his price, etc. Appellant's father, who owned the land upon which the house occupied by appellant was situated, as well as the pasture surrounding said house, was placed on the stand as a witness, and denied knowing of the presence of the still, etc., or that he had anything to do with it. The statute denounces any person who keeps or is interested in keeping any premises, building, room, or place to be used for the purpose of manufacturing spirituous, vinous or malt liquors, etc. The case was submitted to the jury upon the theory of circumstantial evidence. The proof showing appellant in possession of and attempting to sell the manufactured liquor found at or near the same point as was the still, mash, etc., and it being located in the immediate vicinity of his house and upon land belonging to his father, who disclaimed any control, ownership, or knowledge of same, it thus became a question for the jury to pass upon, and we are not led to concede that their finding is not supported by the testimony.

The motion for rehearing will be overruled.