JOHNNIE ODLE V. THE STATE.

No. 20955. Delivered April 17, 1940.
Rehearing Denied May 15, 1940.

The opinion states the case.

*Smith & Dowdy,* of McKinney, for appellant.

*Roland Boyd,* County Attorney, and *Dwight Whitwell,* Assistant County Attorney, both of McKinney, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction in Collin County assessing a fine of $100.00 and ten days in jail upon an indictment alleging that on the 7th day of July, 1939, Johnnie Odle unlawfully took and offered to take and accept and place for A. C. Sparlin a bet and wager of money in the amount of twenty-five cents "on a baseball game, athletic contest and sports event."

The prosecution is under Art. 652a, Sec. 1, of the Penal Code.

Several questions are raised and those not here discussed are overruled. Bill of Exception No. 1, which complains of the failure of the court to sustain the appellant's motion to quash the indictment, will be first considered. Several questions of

law are presented in connection with this motion, but we will discuss it more as a general proposition.

If the offense alleged and proven is in violation of the bookmaking statute above referred to, the case must be affirmed. The facts are very complicated, made so for the evident purpose of evading the statute, but when analyzed, we find no material difference between the case here presented and others which have been passed upon by this court, particularly Simmons v. State, 120 S. W. (2d) 1061.

Among other contentions made is that the purchaser of the ticket in question did not know which ball game he was betting on and consequently could not come within the statute. On the following facts, we conclude that instead of exercising his judgment as to the two teams whose consolidated scores he championed, he merely took the chance on drawing for them. After he did so, the procedure is simple and parallel to the ordinary and well-understood method of bookmaking.

The appellant was engaged in business in the city of McKinney. He kept in his place a ticker from which he received the reports daily of the various ball games of both the American and National Leagues as they progressed. He operated a device or scheme consisting of 120 sealed combinations of two teams' initials on a card. The customer paid twenty-five cents for this number, removed it from the card, opened it, and kept this as his receipt and claim check. He could purchase as many as he desired. Of the thirty dollars received from the sale of the tickets on each card the appellant would keep five dollars and place the other in a fund so that the winner, at the close of the games, would draw down twenty-five dollars. Apparently appellant was doing a thriving business and proceeded upon the theory that he was not violating the law. To settle the matter, he invited the patronage of the sheriff's department with a test case to determine the status of his operation. The purchaser of the ticket was a deputy sheriff, in company with two others. He did not win. Each ticket had a different combination. If the combined scores of the two teams drawn exceeded that of any other two teams, either the American or National League, the holder is the winner. It is possible, but not likely, that there should be two or more winners, in which event the twenty-five dollars is divided equally among them.

The material part of the indictment is as follows: "Johnnie Odle did then and there unlawfully take and offer to take and

accept and place for A. G. Sparlin a bet and wager of money, to-wit: twenty-five cents of the value of $0.25, on a baseball game, athletic contest and sports event."

This form of the indictment is approved in the case of Simmons v. State, supra.

It is contended that the indictment is duplicitous. This is not sustained. We quote from Branch's Ann. Tex. P. C., p. 259, sec. 506:

"Duplicity is the joinder in the same count of two or more separate offenses, or the joinder in the same count of two or more phases of the same offense, where the punishment is different. To be bad for duplicity, more than one such offense or phase must be completely alleged or the incomplete allegations may be rejected as surplusage. Henderson v. State, 2 Texas Crim. App. 88. Hickman v. State, 22 Texas Crim. App. 441; 2 S. W. 640. Hammons v. State, 29 Texas Crim. App. 448; 16 S. W. 99. Johnson v. State, 177 S. W. 490. * * * To be bad for duplicity, it must appear from the face of the indictment that two or more separate offenses are charged in the same count. Rumage v. State, 55 S. W. 64."

"If the indictment does not in the same count contain a complete description of two offenses, the words applicable to that in respect to which the charge is incomplete may be rejected as surplusage. Hammons v. State, 29 Texas Crim. App. 448; 16 S. W. 99."

"When the punishment is the same, an indictment is not bad for duplicity because it charges in the same count several means of accomplishing the same result. Coney v. State, 2 Texas Crim. App. 62. Moore v. State, 37 Texas Crim. Rep. 552; 40 S. W. 287. Burt v. State, 38 Texas Crim. Rep. 440; 40 S. W. 1000. Medina v. State, 49 S. W. 380. Reum v. State, 49 Texas Crim. Rep. 128, 90 S. W. 1109."

"Where several ways by which an offense may be committed are set forth in the same statute, and they are embraced in the same general definition and are punishable in the same manner and to the same extent, and are not repugnant to each other, they are not distinct offenses but different phases of the same offense, and may be charged conjunctively in the same count. Copping v. State, 7 Texas Crim. App. 61. Gage v. State, 9 Texas Crim. App. 259. Day v. State, 14 Texas Crim. App. 30. Nicholas v. State, 23 Texas Crim. App. 326; 5 S. W. 239. Comer v. State, 26 Texas Crim. App. 512; 10 S. W. 106.

Howell v. State, 29 Texas Crim. App. 592; 16 S. W. 533. Laroe v. State, 30 Texas Crim. App. 374; 17 S. W. 934. Willis v. State, 34 Texas Crim. App. 149; 29 S. W. 787. Tellison v. State, 35 Texas Crim. Rep. 388; 33 S. W. 1082. Moore v. State, 37 Tex. Crim. Rep. 552, 40 S. W. 287. Brown v. State, 38 Texas Crim. Rep. 597; 44 S. W. 176. Shirmacher v. State, 45 S. W. 802. Prendergast v. State, 41 Texas Crim. Rep. 358, 57 S. W. 850. Holman v. State, 90 S. W. 174. Reum v. State, 49 Texas Crim. Rep. 128; 90 S. W. 1109. Morris v. State, 57 Texas Crim. Rep. 163; 121 S. W. 1112. Cabiness v. State, 146 S. W. 934. Stevens v. State, 150 S. W. 944. Walker v. State, 151 S. W. 318. Goodwin v. State, 158 S. W. 274. Stevens v. State, 159 S. W. 505. Johnson v. State, 171 S. W. 212."

It is further contended that the indictment should have been quashed because it fails to allege the name of the baseball team. The contrary was held in the Simmons case, supra.

Again, it is contended that the indictment contains repugnant provisions because it uses the words, "a baseball game, athletic contest and sports event." This contention is not sustained under the authorities cited in Branch's Ann. Tex. P. C., p. 259, sec. 505, reading as follows: "If any count in an indictment contains inconsistent allegations, both of which cannot be true, and there is no means of ascertaining from the face of the indictment which is meant, the indictment is bad for repugnancy. Cain v. State, 18 Texas 392. Hardeman v. State, 16 Texas Crim. App. 1. Scott v. State, 40 Texas Crim. Rep. 105; 48 S. W. 523. Munoz v. State, 40 Texas Crim. Rep. 457; 50 S. W. 949. Edgerton v. State, 70 S. W. 90. Hickman v. State, 44 Texas Crim. Rep. 533; 72 S. W. 587. Davis v. State, 60 Texas Crim. Rep. 108; 131 S. W. 315. Hubbert v. State, 147 S. W. 267."

Probably the most difficult question raised in connection with this bill of exception is that the court should have defined "bookmaking." The definition of this word seems to be immaterial. The offense with which he is charged is properly alleged in the indictment and properly described in the court's charge. The conclusion that it is bookmaking is derived from our own statute regardless of the definitions which may be accepted generally. Taking this view, the court has properly submitted the question.

In defining the word "bet" the court used the following language: "The legal meaning of the term 'bet' is the mutual agreement and tender of a gift of something valuable, which

is to belong to one of the contending parties, according to the result of a trial of chance, or skill, or both combined."

Based on Mayo v. State, 82 S. W. 515, and Melton v. State, 124 S. W. 910, Words and Phrases, (2d Series), Vol. 1, p. 433, defines "bet" as follows: "The legal meaning of the term 'bet' is the mutual agreement and tender of a gift of something valuable, which is to belong to one of the contending parties, according to the result of the trial of chance or skill, or both combined."

The definition approved by this court, as stated in Words and Phrases, is practically identical with that given by the court in the case at bar.

The definition of "wager," as given in the court's charge, is as follows: "A wager is a contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening of an uncertain event."

From Words and Phrases, (2d Series,) Vol. 4, p. 1217, we copy the following definition: "A wager is a contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening of an uncertain event."

It is our conclusion that the indictment properly alleges the offense as defined under Art. 652a, sec. 1, and that the evidence amply sustains the verdict of the jury.

The judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

Our conclusion, after re-examining the record in the light of appellant's motion for rehearing, is that we were correct in holding originally that the evidence warrants the conclusion that appellant was guilty of bookmaking.

We are also of opinion that the charge of the court adequately presented the case to the jury.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.