

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

April 20, 1992

Honorable Ron Lewis
Chairman
Natural Resources Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-112

Re: The legality of "casino night" fundraising
by nonprofit organizations (RQ-284)

Dear Representative Lewis:

You ask about the legality, under the gambling laws, of a charitable fund-raising event which you describe as follows:

> Admission for the patrons of this event is paid for on a table by table basis. A main attraction at this event is a large room full of casino games.... [P]atrons would present a verification of their reservation for a table and then would be given a certain amount of chips (more of which could be purchased during the night). At the close of play, they would then enter a room where they could "purchase" prizes. These prizes would be donated by local merchants.

Section 47.02(a) of the Penal Code provides in part:

> A person commits an offense if he:

> > (1) makes a *bet* on the partial or final result of a game or contest or on the performance of a participant in a game or contest;

> > . . . .

> (3) plays and *bets* for money or other thing of value at any game played with cards, dice, or balls. (Emphasis added.)

"Bet," for purposes of section 47.02, is defined as "an agreement that, dependent on chance even though accompanied by some skill, one stands to win or lose something of value." Penal Code § 47.01(1). In our opinion, those participating in the event you describe would be "making bets" within the section 47.01 definition of "bet" and the section 47.02 provisions making it an offense to "make[] a bet."

Attorney General Opinion JM-412 (1985), in considering the legality under sections 47.01 and 47.02 of a "casino night" sponsored by a school district, noted that "in Texas, three basic elements comprise the offense of gambling: consideration, chance, and prize." Attorney General Opinion JM-412 at 2; *see also Odle v. State*, 139 Tex. Crim. 288, 139 S.W.2d 595 (1940), *overruled on other grounds, Green v. State*, 578 S.W.2d 411, 413 n.1 (Tex. Crim. App. [Panel Op.] 1979); *Ellis v. State*, 80 Tex. Crim. 208, 209, 189 S.W. 1074, 1075 (1916, no writ). The fund raising event you ask about appears to satisfy this definition: the admission fee and any other sums paid for "chips" by participants would constitute "consideration," the "casino games" would presumably involve "chance,"[1] and the chips retained by participants at the close of play as well as the items donated by local merchants which the chips could be used to purchase would constitute "prizes."

We note that section 47.02(b) of the Penal Code provides that "it is a defense to prosecution under this section that:"

> (1) the actor engaged in gambling in a *private place*;
>
> (2) no person received any economic benefit other than personal winnings; and

---

[1] We note that a recent attorney general opinion concluded that in order to fall within the state constitution's restrictions on "lotteries," *see* Tex. Const. art. III, § 47, the "chance" element of a game must predominate over the element of skill. *See* Attorney General Opinion JM-1267 (1990) (and authorities cited therein). The opinion noted, however, that the chapter 47 Penal Code prohibitions on gambling are broader than the constitutional restrictions on "lotteries" and that they "effectively prohibit those types of games typically conducted in gambling casinos." *See also* Searcy & Patterson, *Practice Commentary*, Tex. Penal Code § 47.02 (Vernon 1973).

> (3) except for the advantage of skill or luck, the risks of losing and the chances of winning were the same for all participants. (Emphasis added.)

"Private place" is defined in section 47.01(7) of the Penal Code, in part, as "a place to which the public does not have access." You say that the fund-raising event in question would be held at the Plano Civic Center. Your description indicates that the general public would have access. Accordingly, the event would not fall within the defense set out in section 47.02(b). *See, e.g., Cole v. State*, 28 Tex. App. 536, 13 S.W. 859 (1890) (schoolhouse a public place even while building not being used for school purposes).

We also note that in defining "bet," section 47.01(1) of the Penal Code provides that

> [a] bet does not include:
>
> . . . .
>
> (C) an offer of merchandise, with a value not greater than $25, made by the proprietor of a bona fide *carnival contest* conducted at a *carnival* sponsored by a nonprofit religious, fraternal, school, law enforcement, youth, agricultural, or civic group, if the person to receive the merchandise from the proprietor is the person who performs the *carnival contest*; or
>
> (D) an offer of merchandise, with a value not greater than $25, made by the proprietor of a bona fide *carnival contest* conducted at a *carnival* sponsored by a nonprofit agricultural or civic group incorporated by the State of Texas prior to 1955. (Emphasis added.)

You have not characterized the event you ask about as a "carnival" or the casino games to be played there as "carnival contests." Determining whether the event would qualify as a "carnival," or the games as "carnival contests," within the meaning of the section 47.01(1) exception to the definition of "bet," would require

consideration of facts which we do not have before us.[2] *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 208, 209 (1987) (defining "carnival" as, *inter alia*, "an organized program of entertainment or exhibition"). *But see*, Health & Safety Code ch. 824 (providing licensing requirements for "circuses, carnivals, and zoos"); *id.* § 824.001(4) (defining "carnival" as "a commercial variety show featuring animal acts for public entertainment").[3]

## SUMMARY

Those participating in "casino games" at the described non-profit charitable organization fund-raising event would violate the Penal Code section 47.02 prohibition on gambling -- "making bets" -- unless, as a matter of fact, the "casino games" in question fall within a "carnival contests" exception to the definition of "bet" in the Penal Code section 47.01(1)(C) and (D).

Very truly yours,

DAN MORALES
Attorney General of Texas

---

[2]Notably, the language now in section 47.01(1)(C), which was added in 1987 by the 70th Legislature, had been adopted in the previous regular session but vetoed by the governor. *See* Acts 1987, 70th Leg., ch. 313; H.B. 1776, 69th Leg. (1985) (vetoed). Representative Messer, sponsor of the 1985 bill, testified that it was directed toward legalizing contests such as "ring tosses" and "ball throws" at the Bell County Fourth of July Rodeo and Carnival and at other events of a similar nature. Hearings on H.B. 1776 Before the House Comm. on Bus. & Com., April 9, 1985.

[3]Having determined that, unless the "carnival contest" exemptions to the definition of "bet" apply, those participating in the casino games at the event you ask about would violate the section 47.02 prohibition on gambling: "making bets." We do not think it necessary to determine here whether or to what extent the event would implicate other chapter 47 penal provisions. *See* Penal Code §§ 47.03 (gambling promotion), 47.04 (keeping a gambling place), 47.06 - 47.07 (possession of gambling device, equipment, or paraphernalia).

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General