### J. EDWARDS THOMAS

*v.*

### THE FIRST NATIONAL BANK OF BELLEVILLE.

*Opinion filed December 22, 1904.*

1. GAMING—*when endorsement of certificate of deposit is void.* Under the Criminal Code an endorsement of a certificate of deposit in a bank is void where the consideration for the endorsement is an agreement to pay the endorser a share of the profits made by using the proceeds of the certificate in gambling on races.

2. SAME—*when defense of illegal consideration should be interposed by bank.* If the endorser of a certificate of deposit in a bank stops payment upon the ground that the consideration for the endorsement was a gambling one, it is the duty of the bank, when sued on the certificate by the endorser, to interpose the defense of illegal consideration.

3. SAME—*what is a gambling transaction.* Investing money with a firm engaged in book-making, pool selling and betting on horse races is a gambling transaction, although the investor is termed a depositor, to whom the firm guarantees the right to share in the profits of the business to the extent of two per cent a week on the sum deposited and to withdraw the deposit at any time.

4. SAME—*courts will not aid in enforcing an illegal contract.* Courts will not aid in enforcing a contract which is part of a gambling transaction, but will leave the party in the position he has placed himself.

5. CONFLICT OF LAWS—*court will not enforce foreign contract against its laws.* Comity between States does not require a court

to enforce a contract against its laws or against its public policy
even though the contract is lawful in the State where it was made.

6. PRACTICE—*filing two briefs for same party is a violation of
rule 15.* Filing separate briefs and arguments by the different at-
torneys appearing for the same party is a violation of rule 15 of the
Supreme Court.

APPEAL from the Appellate Court for the Fourth Dis-
trict;—heard in that court on appeal from the Circuit Court
of St. Clair county; the Hon. B. R. BURROUGHS, Judge, pre-
siding.

This is an appeal from the Appellate Court for the Fourth
District to reverse a judgment in that court in favor of appel-
lee, against appellant, in an action of assumpsit upon a cer-
tificate of deposit issued by the defendant to one J. F. Wassell
and endorsed by him to plaintiff.

The evidence shows that the firm of E. J. Arnold & Co.
had their principal office in St. Louis, Mo., where from Sep-
tember, 1902, until February, 1903, they were engaged in
the business of book-making, pool selling and betting on
horse races. They had branches of their business in Chicago,
Harlem, Hawthorn, Washington, D. C., and other places,
and sold pools on various race tracks throughout the country.
They also had a breeding farm in Illinois, upon which they
claimed to raise horses. They sought customers throughout
the country, but the customers did not do individual betting
or buying pools, but were called depositors. They placed cer-
tain amounts of money in the hands of Arnold & Co., and
were by them guaranteed the right to share in the profits of
the business to the extent of two per cent per week on all
sums deposited and to withdraw the original deposit at any
time. The appellant, with full knowledge of the character of
the business carried on by Arnold & Co., in September, 1902,
engaged with them to open a branch office in Washington,
D. C., and there solicit deposits from persons willing to in-
vest in the business. He was to remit the deposits to Arnold

& Co. and receive ten per cent of all money thus secured as his share or compensation. He operated that branch office during the existence of the firm of Arnold & Co., advertised himself as manager, distributed literature of the firm, and orally and by letter solicited investments, and advocated and advanced the business generally. When he secured a customer it was his custom to deposit the money received in bank and send his individual check to the firm at their principal office in St. Louis, from which was issued a certificate directly to the customer. J. F. Wassell, a printer by trade, engaged in the government printing office in Washington, his home being in Belleville, this State, had his attention called to the flattering reports of the financial success of Arnold & Co., and on January 23, 1903, went to the office of appellant in Washington, D. C., for the purpose of investing a certificate of deposit issued by the appellee bank, payable to him, amounting to $1335. He was informed by appellant that Arnold & Co. would accept nothing but cash, and it was therefore agreed that appellant should take the certificate himself and issue his check directly to Arnold & Co. Appellant was also to advance $15 in addition to the $1335 due on the certificate and send the same to Arnold & Co., provided Wassell should endorse and deliver to him the certificate of deposit and pay the $15 advanced in cash on the following Monday. The agreement was carried out according to these terms and the certificate endorsed to appellant. On the morning of February 8, 1903, the home office of Arnold & Co. at St. Louis failed to open and the partners absconded. Thereupon Wassell informed the bank of the endorsement and delivery of said certificate of deposit and notified it not to pay the same. The certificate matured the following March, and at the April term of the circuit court of St. Clair county this suit was commenced. A jury was waived and the case tried by the court. On the trial appellant submitted four propositions of law to the court, all of which were marked refused and judgment rendered against the plaintiff for costs of suit.

An appeal was prosecuted to the Appellate Court for the Fourth District, where the judgment of the circuit court was affirmed.

L. D. TURNER, and L. D. TURNER, Jr., (DILL & WILDERMAN, of counsel,) for appellant.

R. W. ROPIEQUET, and WINKELMANN & BAER, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is contended by counsel on behalf of appellant that the certificate of deposit sued on, when endorsed by the original payee, became, in effect, a promissory note, and upon being presented to the bank for payment by the holder, properly endorsed, it was the duty of the bank to immediately pay the same. This, it is said, is so because the title to the certificate was absolutely vested in and became the property of the assignee at the time of its endorsement, and that the only defense which the bank could make to this suit was such as would go to the ownership of the instrument, affecting the title thereto, such as forgery. Conceding the law to be as claimed in all legitimate transactions, it has no proper application to the facts in this case. The defense does question the title of the plaintiff to the certificate of deposit sued on. Section 131 of chapter 38 of our statute provides: "All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, * * * where the whole or any part of the consideration thereof shall be for any money, property, or other valuable thing won by any gaming, or playing at cards, dice, or any other game or games, or by betting on the side or hands of any person gaming, or by wager or bet upon any race, * * * shall be void and of no effect." Section 136 of the same chapter provides: "No assignment of any bill, note, bond * * * shall, in any manner, affect the defense

of the person giving, granting, drawing, entering into or executing the same, or the remedies of any person interested therein."

It is insisted by appellant that section 131 above quoted has no proper application to the transaction between the appellant and J. F. Wassell, because the latter, as a customer of Arnold & Co., did not agree to enter into a gambling transaction, but was a mere depositor with them, investing his money in the business of that firm. In the case of *Chapin* v. *Dake*, 57 Ill. 295, it was held, where a party in possession of two drafts for $1000 each, drawn in his favor, had lost $1500 at gaming, endorsed the drafts and delivered them to the winner and received the difference, $500, in money, under our statute against gaming the endorsement was void and the property in the drafts remained in the payee, and, although in the hands of an innocent holder for value, such endorsement had no more effect than could be given to it provided it had been forged. Under that authority the endorsement made by Wassell to appellant in furtherance of a gambling transaction was null and void and the title to the certificate of deposit remained in the payee. When the suit was brought appellant had no more claim against the bank than if the endorsement had never been made, and it had not only the right, but it was its duty, to question plaintiff's title to the instrument sued upon. (*Williams* v. *Judy,* 3 Gilm. 282.) It certainly cannot be seriously contended that the business of Arnold & Co. was not that of gambling, so far as they were engaged in book-making, pool selling and betting on horse races, nor that the scheme by which they obtained money from customers was not for the purpose of carrying on that illegitimate business. Their agreement to pay to customers the unprecedented profit of two per cent per week strongly tended to prove that calling them depositors was a mere subterfuge. At least the evidence fairly tended to show that the money which was deposited with Arnold & Co. was nothing more nor less than placing money in their hands to be used

in gambling, two per cent per week to be the depositor's share of the winnings. Whether the transaction was an honest, legitimate one or a mere device to avoid liability under the statute against gambling was a mixed question of law and fact, which has been settled adversely to the appellant by the judgment of affirmance in the Appellate Court. It seems to us unreasonable, under the evidence in this case, to contend that the appellant was a *bona fide* assignee of the certificate. He was the agent and promoter of Arnold & Co. in their gambling transactions and he knew their methods of doing business. Wassell had the right to stop payment on the certificate in order to protect himself against loss. It then not only became the right but it was the duty of the defendant bank to interpose the defense interposed.

It is next insisted that the assignment being made in the city of Washington and the principal office of Arnold & Co. being located in St. Louis, and no law of either the State of Missouri or District of Columbia having been offered in evidence condemning the transaction in those jurisdictions, the assignment should have been sustained and judgment entered for the plaintiff, notwithstanding the statute of this State. The principal office of Arnold & Co. was in St. Louis, but the evidence shows that they carried on their gambling business to a greater or less extent in Illinois. The certificate of deposit was issued by an Illinois bank; the assignor, Wassell, was a resident of this State, and the suit to recover the amount of the certificate was brought by the plaintiff in a court of this State. A contract made in one State, though lawful there, will not be enforced in another where to do so would contravene the criminal laws of the latter or where to do so would be against the express prohibition of its laws. Comity between different States does not require a law of one State to be executed in another when it would be against the public policy of the latter State. No jurisdiction is bound to recognize or enforce contracts which are injurious to the welfare of its people or which are in violation of its own

laws. (*Pope* v. *Hanke,* 155 Ill. 617; Story on Conflict of Laws, sec. 327.) Therefore, conceding that there was no law in the District of Columbia or in the State of Missouri prohibiting the making of gambling contracts, it was contrary to the laws of this State, where appellant sought to enforce his remedy.

Neither of the propositions submitted by the plaintiff to the trial court announces the law of the case applicable to the facts, as we have already shown, and they were therefore properly refused.

There is another consideration upon which the plaintiff could not maintain this action, if we are correct in the view that it was a part of a gambling transaction. He sought affirmative relief by enforcement of that contract, and the rule is that courts will refuse to aid him in that attempt but will leave him where he has placed himself.

Substantial justice has been done in this case by the judgment of the circuit court and its affirmance by the Appellate Court, and we find no reversible error in the record.

It appears that the appellant in this court is represented by a lawyer who signs his brief and argument as "attorney for appellant." A firm of lawyers also appear for him, and they file a separate and independent brief and argument, which they sign as "of counsel for appellant." The appellee is represented by an individual attorney who files a brief and argument over his name, and a firm of attorneys also appear for it filing another brief and argument on its behalf, so that we have two briefs and arguments on either side of the case. This is a violation of our rule 15, and imposes upon the court the burden of reading and considering more than one brief and argument on behalf of each party. The practice, if adopted, would in many cases require the reading and consideration of a large number of briefs and arguments, limited only by the number of attorneys who happen to be employed in the case. Of course, each counsel has a right to present his views of the case, but by conference and consulta-

tion among themselves one brief and argument should present the respective theories of counsel and be incorporated in a single brief and argument. The impracticability of any other rule will be readily recognized by the profession.

*Judgment affirmed.*