THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES H. MITCHELL *et al.*, Defendants-Appellants.

Third District No. 82—119

Opinion filed January 19, 1983.

HEIPLE, J., dissenting.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellants.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendants, James H. Mitchell and David R. Mitchell, were convicted of gambling by the circuit court of Peoria County following a jury trial and fined $50 each and ordered to make restitution in the amount of $375 each to the Illinois Department of Law Enforcement.

The charge grew out of an incident which occurred on March 16, 1980, when undercover agent William Pennell of the Illinois Division of Criminal Investigation took part in two poker games in the basement of a residence at 1309 Elmhurst, Peoria. According to the testimony of Pennell, he was invited to participate in the game by an informer, Michael Paulson, who accompanied Pennell to the residence which was owned by defendant David Mitchell. Pennell and eight other individuals, including both defendants, paid $500 each to get into a game of "Hold 'em" poker. The money was collected by defendant David Mitchell and laid on the piano. Poker chips representing $500 in value per player were distributed to the nine participants.

David Mitchell explained that the $4,500 pot would be distributed to the first and second-place winners in the amounts of $3,500 and $1,000, respectively. The game was played with two cards in the hand of each participant and three, four and five cards dealt face up to the center of the table progressively as the players announced their decision to bet, call or fold. David Mitchell was the first player to lose all of his chips; Pennell was the second.

Pennell and David Mitchell then discussed starting up a second game with $250 stakes. Pennell left to get more money, returned, and the second game was started up with Pennell, David Mitchell and two others who had also lost at the first table. Pennell and David Mitchell again each lost all of their chips, and Pennell left the residence before the winners had been determined at either table. At the completion of all testimony and arguments of counsel, the court instructed the jury on the applicable law.

Over the State's objection, the jury was instructed that, in addition to proving that the defendants played a game of chance or skill for money or other thing of value (Ill. Rev. Stat. 1979, ch. 38, par. 28—1(a)(1)), the State had the burden of proving that the defendants were not participating for the offer of prizes in any *bona fide* contest for the determination of skill (Ill. Rev. Stat. 1979, ch. 38, par. 28—1(b)(2)). After a half hour of deliberations, the jury returned verdicts of guilty against both defendants. The court, after considering the wide range of sentences available under section 5—5—3 of the Unified Code of Corrections from imprisonment through restitution (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(b)), imposed the fines and orders of restitution as aforesaid. This appeal followed.

The sole issue presented for our consideration is whether the State proved defendants guilty beyond a reasonable doubt of having committed the offense of gambling as charged. (Ill. Rev. Stat. 1979, ch. 38, par. 28—1(a)(1).) Defendants' primary contention is that the State failed to prove beyond a reasonable doubt that the game did not qualify as a *bona fide* contest for the determination of skill (Ill. Rev. Stat. 1979, ch. 38, par. 28—1(b)(2)), an exception to the games constituting offenses in subsection (a)(1) of the gambling statute. Pennell testified that he was less skillful than certain other players who participated in the games. His performance, as testified to by himself, supported his conclusion in this regard.

The trial court ruled that the issue of whether "Hold 'em" poker qualified for the exception or not was a question of fact in this case. Whether or not the issue is a question of fact is not before us. (See Annot., 135 A.L.R. 104, 130-33 (1941).) Defendants contend merely

that the jury's conclusion cannot be supported by the evidence of record.

Certainly the State has the burden of proving each element of the offense beyond a reasonable doubt. In the present case, the jury found that the State had borne its burden. On appeal we will not reverse defendants' convictions unless we find the evidence so unsatisfactory as to create a reasonable doubt of guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671; accord, *People v. Diesel* (1970), 128 Ill. App. 2d 388, 262 N.E.2d 15, 18 (same standard applied in bench trial).) Circumstantial evidence has the same validity and weight in gambling cases as in other offenses. Ill. Rev. Stat. 1979, ch. 38, par. 28—1(d).

While the defendants have failed to cite any authority for the precise issue they present, the State refers us to *People v. Diesel* which, they suggest, provides authority by implication for affirming defendants' convictions. In *Diesel*, as here, defendant asserted that the State had not borne its burden of proving him guilty of gambling (Ill. Rev. Stat. 1967, ch. 38, par. 28—1(a)(1)) beyond a reasonable doubt. Diesel was seen by police officers seated at a table with others, cards in hand and money on the table. Without discussing the rules of the game in progress or the exception in subparagraph (b)(2) of the gambling act, the court upheld Diesel's conviction on the reasonable doubt challenge.

In our opinion, the poker game played under the circumstances of the instant case is precisely the type of "game of chance or skill" which falls squarely within the plain meaning of the activity proscribed under subsection (a)(1). Although there was some testimony tending to indicate that the poker games involved some degree of skill, we do not find the jury's implicit conclusion that they were not "*bona fide* contests for the determination of skill" so improbable as to warrant a reversal. Both direct and circumstantial evidence was introduced to support the conclusion that the games, in fact, required a combination of skill and chance, and that they were definitely not the type of "*bona fide* contests" excepted from subsection (a)(1). See *People v. Diesel* (1970), 128 Ill. App. 2d 388, 394-95, 262 N.E.2d 15, 18-19.

Defendants next contend, again without citation to any authority whatever, that their convictions may not stand because the evidence showed that both defendants "through lack of skill" failed to reach the point where they qualified to win any money. The argument is specious, at best.

The fact that poker chips were used in lieu of cash at the table and that the rules allowed for only two cash winners does not diminish the fact that each participant played "for money or other thing of value." Plainly, "things of value" (poker chips representing various dollar

amounts by their colors) were what was being bet and money was all that could be won. (There was no evidence tending to establish that the defendants merely donated $500 each to the pot for the entertainment of their friends with no hope of possibly winning money back.) Were we to adopt the defendants' reasoning, we would effectively repeal the gambling statute, a legislative function which the judiciary is not empowered to perform.

Finally, although Pennell could not state definitely that anyone had, in fact, left the games with money, sufficient evidence was presented at trial to permit the jury to find that the games were played "for money or other thing of value" as opposed to, for instance, a pat on the back. Defendants' argument to the contrary is meritless.

For the foregoing reasons, the defendants' convictions are affirmed.

Affirmed.

STOUDER, J., concurs.

JUSTICE HEIPLE, dissenting:

The position of the State of Illinois on gambling is ambivalent, inconsistent, contradictory and self-serving. We have State regulated race track betting. We have bingo. We have the Illinois State Lottery. People gamble in their homes. They gamble on the golf course. They bet on baseball, basketball, football, and prize fights. They shop at certain stores so they can be in the store's weekly lottery drawing. They buy and sell futures contracts through their stockbrokers. They gamble in taverns, private clubs and fraternal organizations.

Gambling is more than endemic in Illinois. It is epidemic. Officially, however, it is illegal in most situations. How is this illegality recognized? It is tolerated, accepted, smiled at, and, in rare instances, prosecuted. If all of the illegal gambling in Illinois were totted up for the purpose of computing the percentage of gambling that is prosecuted, prosecutions would equal an infinitesimal fraction of one percent. No one could doubt that. Yet gambling prosecutions continue in selected cases. A good argument could be made that any gambling prosecution is unconstitutional as involving an unequal application of the laws.

The instant case is just so.

Defendants paid $500 each to enter a game called "Hold 'em" poker. There were nine players. Chips were issued in denominated values of $50, $20 and $5. These chips were not redeemable but would be used to play successive poker hands. At the end of the game, the player

with the most value in chips would receive a prize of $3,500 and the player with the next most value in chips would receive $1,000. The $4,500 would be paid from the entrance fee of $500 paid by each of the nine players. There was to be no cut for the house and no refund for any chips. No part of the entry fee would be refunded once the game had begun.

Unfortunately for the defendants in this case, one of the nine players in the game in question was undercover officer William Pennell, a special agent with the Illinois Division of Criminal Investigation. He was also an unskilled and unlucky poker player. He lost $500 in the first game of "Hold 'em" and $250 in a second game which was played for smaller stakes. The $750 which he lost was not his money, of course. It was seed money advanced to Pennell by the State of Illinois, the proprietor of the Illinois State Lottery, for the purpose of ferreting out evidence against gambling.

The two defendants were subsequently charged by the State of Illinois, tried and found guilty of gambling. They were fined $50 each and ordered to refund Pennell's $750 seed money, presumably to be used by Pennell in future evidence gathering operations regarding gambling.

Defendants have appealed, claiming that the statute on gambling exempts their particular activity from prosecution.

What does the statute say?

First of all, it says that a person commits gambling when he plays a game of chance or skill for money or other thing of value, unless excepted in subsection (b) of section 28—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 28—1).

What does the exception in subsection (b) say? It says:

> "(b) Participants in any of the following activities shall *not* be convicted of gambling;
>
> * * *
>
> (2) Offers of prizes, award or compensation to the actual contestants in any bona fide contest for the determination of skill, speed, strength or endurance ***." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 28—1(b)(2).

The defendants quite correctly claim that the game of "Hold 'em" poker which they were playing was a contest for the determination of skill. And it might be said that the element of endurance was also involved. The money paid at the conclusion of the contest was prize money for the two most skillful contestants. It must be remembered that no hand of cards was played for money. Additional chips could not be purchased during the game. And at no time could the chips be cashed in for anything. If a person dropped out before the end of the

game, his chips were valueless. The fund from which the two prizes were paid was created from the entrance fees.

The State argues that poker is not a game of skill but is a game of pure chance or luck. This allegation is a canard. Anyone familiar with even the barest rudiments of the game knows better. Pure luck? Send a neophyte player to a Saturday night poker game with seasoned players and he will leave his clothes behind and walk home in a barrel. Pure luck? This is true of bingo or lottery. But it cannot be said of poker. The court should take judicial notice that poker is a game of skill. It cannot be gainsaid, of course, that there is an *element* of luck in poker. Of course there is. There is an element of luck in everything in life. Even the prosecution of a lawsuit contains an element of luck. But everything that contains an element of luck is not gambling.

The payment of the specified entry fee in order to enter the instant contest was no different than the payment of an entry fee to enter a bridge tournament, chess tournament, bowling tournament or golf tournament. In such tournaments, the entry fee is not refundable. Some such tournaments involve the receipt of cash prizes while others result in trophies. Compensation and prizes in contests of skill are exempted by statute. The fact that the prize here was cash instead of a trophy is of no moment. That does not make it gambling. So far as prizes are concerned, even the smallest trophy has a value. If defendants are guilty of gambling because they participated in a contest involving cash prizes, then everyone and anyone receiving a trophy or ribbon in any type contest is guilty of gambling. Such a strained construction cannot be the law.

The question here is one of law. It is not a question of whether one is for or against gambling. It is not a question of whether poker playing is gambling in popular parlance. The question, rather, is whether these particular defendants in this particular game of "Hold 'em" poker brought themselves within a particular prohibited section of the gambling statute. And secondly, if their activity constituted prohibited gambling in the first instance, was it excepted from prosecution by the exception in the statute?

Clearly, as a matter of law, the defendants are not guilty. They are entitled to a judgment of acquittal. Accordingly, I dissent.