**RESORTS INTERNATIONAL, INC., Plaintiff,**

v.

**Peter (Pierre) ZONIS, Defendant.**

**No. 83 C 2124.**

United States District Court, N.D. Illinois, E.D.

Jan. 10, 1984.

Jean Maclean Snyder, Selwyn Zun, D'Ancona & Pflaum, Chicago, Ill., for plaintiff.

Jeffrey Brown, Engerman, Erlich, Jacobs & Berman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Plaintiff Resorts International, Inc. ("Resorts") filed this complaint against defendant Pierre Zonis ("Zonis") seeking judgment of $25,000 for four checks executed by Zonis and subsequently dishonored by his bank. Jurisdiction is asserted pursuant to 28 U.S.C. § 1332, and the amount in controversy is alleged to exceed $10,000. The matter is now before the Court on Zonis' motion to dismiss, his alternative motion for summary judgment and Resorts' cross-motion for summary judgment. For reasons set forth below, Zonis' motion to dismiss is granted and Resorts' motion for summary judgment is denied.

Zonis executed the four checks, or markers, in Atlantic City while on a junket trip sponsored by Resorts' casino. He arranged a $15,000 line of credit with Resorts before he left Chicago and increased his credit limit to $25,000 after he arrived in Atlantic City. Zonis began gambling at the dice tables as soon as he arrived and almost immediately lost the cash he had brought with him. He then signed two checks, or markers, and obtained $15,000

worth of chips to continue gambling. He also lost those chips. The next day, he signed two additional markers in order to continue his gambling. Zonis lost this $11,-000 at the dice tables as well and returned to Chicago the next day. When Resorts presented the four checks for collection at Zonis' bank, the bank refused to honor the checks because his signatures did not match the signature in the bank's file. Zonis has not paid the $25,000 despite the demands of Resort's collection agents.

At the outset of our inquiry, we note that there is some controversy concerning the law to be applied in this case. Resorts maintains that New Jersey law controls the claims in the case, but it adds its claims are also enforceable under Illinois law. Zonis argues that Illinois law governs the validity of Resorts' claims, and that the enforcement of gambling debts is void as against Illinois public policy. Zonis also contends that Resorts failed to comply with New Jersey law in extending him credit.

▮ Federal courts in diversity of citizenship cases must determine what the rule of law in the state is and apply it; they are not free to ignore state substantive law. *Gracyalny v. Westinghouse Corp.*, 723 F.2d 1311 at 1316, n. 8 (7th Cir.1983). Moreover, we are to apply the choice of law rules of the state in which we sit, Illinois. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The prevailing Illinois rule in contract cases is that if performance and execution of a contract occur in different states, the place of performance governs questions of validity, construction and scope. If, however, the contract is to be performed in more than one state, the law of the place of execution governs. *P.S. & E. Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 127 (7th Cir.1972); *Bergman v. Dartmouth Behavioral Science Center, Inc.*, No. 82–6176, slip op. at 3 (N.D.Ill. April 5, 1983). The parties do not agree where the contracts at issue were exe-

cuted, nor where they were to be performed.

▮ As our discussion will reveal, gambling contracts are contrary to Illinois public policy, and were we to apply Illinois law, we would not enforce Resorts' claims. Even if we were to hold that New Jersey law applied in this case, we would not enforce Resorts' claims. This is so because under the public policy doctrine, a court will refuse to apply the law of a foreign state if "it is contrary to pure morals or abstract justice, or ... the enforcement would be of evil example and harmful to its own people." *Champagnie v. W.E. O'Neil Construction Co.*, 77 Ill.App.3d 136, 139, 32 Ill.Dec. 609, 611, 395 N.E.2d 990, 992 (1st Dist.1979), citing 16 Am.Jur.2d *Conflict of Laws* § 6 (1971). Allowing Resorts to enforce its claims in the present case would violate Illinois public policy,[1] and if choice of law rules mandated application of New Jersey law, we would still decline to enforce Resorts' claims.

The public policy of a state may be found in its judicial decisions, legislation and construction as well as prevailing customs, morals and notions of justice. *Marchlik v. Coronet Insurance Co.*, 40 Ill.2d 327, 332, 239 N.E.2d 799, 802 (1968). The Illinois Supreme Court long ago determined that gambling contracts are contrary to the public policy of the State of Illinois. Speculative contracts for the delivery of grain were declared to be wagers or gambling contracts and therefore void in *Pope v. Handke*, 155 Ill. 617, 40 N.E. 839 (1895). The court observed that such contracts were void both in the state where the notes were executed and in Illinois, where suit was brought. *Id.* at 621, 40 N.E. at 840. In *Thomas v. First National Bank*, 213 Ill. 261, 72 N.E. 801 (1905), the court refused to enforce the assignment of a certificate of deposit to the manager of a firm involved in gambling. The court dismissed the argument that it should enforce the assignment because it was not contrary to

**1.** We therefore need not reach Zonis' arguments that Resorts violated New Jersey statutes or

administrative regulations in extending him credit.

878

law in Washington, where the parties had entered into it:

> A contract made in one State, though lawful there, will not be enforced in another where to do so would contravene the criminal laws of the latter or where to do so would be against the express prohibition of its laws. Comity between different States does not require a law of one State to be executed in another when it would be against the public policy of the latter State. No jurisdiction is bound to recognize or enforce contracts which are injurious to the welfare of its people or which are in violation of its own laws.

*Id.* at 266–67, 72 N.E. at 803.[2]

More recent lower court decisions have restated the state's public policy against gambling. In *Israel v. Selman*, 263 Ill. App. 351 (1st Dist.1931), the court refused to enforce a gambling contract entered into in another state where the transaction was lawful, noting that comity does not require a contract made in one state to be executed in another, where it would violate public policy. *Id.* at 357. *Accord, Hall v. Montaleone*, 38 Ill.App.3d 591, 592, 348 N.E.2d 196, 198 (2d Dist.1976). *But cf. People v. Mitchell*, 111 Ill.App.3d 1026, 67 Ill.Dec. 669, 444 N.E.2d 1153 (3d Dist.1983) (Heiple, J. dissenting) ("The position of the State of Illinois on gambling is ambivalent, inconsistent, contradictory and self-serving.")

But an analysis of the case law alone does not end our inquiry; we must also examine Illinois statutes. Although not controlling in this case, the Illinois statute regarding contracts based upon gambling transactions should be examined in our search for Illinois public policy. The statute provides that

> [a]ll promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof shall be for any money or thing of value, won or obtained in violation of any Section of this article are null and void.

Ill.Rev.Stat. ch. 38, § 28–7(a) (1981). In the absence of legislative history indicating that the Illinois legislature intended to invalidate only gambling contracts which took place within the State of Illinois, this Court will not assume such intent. Public policy could arguably be more narrowly construed to prohibit only gambling on credit, or, in a way more favorable to Resorts, only gambling within the State of Illinois.[3] We find adequate support for continuation of a general public policy against gambling, however, and defer any such "fine tuning" of public policy to the Illinois state courts.

Additionally, this Court need not find that Illinois public policy has changed simply because certain types of gambling, such as lotteries, are now legal in Illinois. Other courts have correctly rejected this argument:

> [i]t is the conclusion of this Court that the legalization of gambling in a limited and regulated manner, while constituting a change to some degree in this state's ancient and deep-rooted public policy prohibiting gambling, has had no effect on the long-established policy of this state condemning gambling on credit and pro-

---

**2.** Resorts claims that the statute construed in *Thomas* is distinguishable from its present counterpart, Ill.Rev.Stat. ch. 38 § 28–7. It focuses on the terms "obtained in violation of this Article" in § 28–7, insisting that Article 28 applies only to gambling contracts done in Illinois due to Ill.Rev.Stat. ch. 38 § 1–5. Section 1–5, however, is a general statute which sets forth the state's criminal jurisdiction. We decline to entertain this rather strained distinction between the statute construed in *Thomas* and Ill. Rev.Stat. ch. 38 § 28–7. Nothing in the legislative history of the latter indicates an intention to allow the enforcement of out-of-state gambling contracts in Illinois. Both *Thomas* and § 28–7 indicate that gambling contracts are contrary to the public policy of Illinois.

**3.** The policy might also be limited to the business of gambling for profit. The Illinois legislature stated the purpose behind the syndicated gambling statute to be one of "restrain[ing] persons from engaging in the business of gambling for profit in this State." Ill.Rev.Stat. ch. 38, § 28–1.1 (1981).

hibiting the enforcement of any claimed obligation relating thereto. *King International Corp. v. Voloshin*, 33 Conn.Sup. 166, 366 A.2d 1172 (1976). *See also Casanova Club v. Bisharat*, 189 Conn. 591, 458 A.2d 1 (1983).

Accordingly, Zonis' motion to dismiss is granted; Resorts' motion for summary judgment is denied. It is so ordered.