ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 20, 2005

The Honorable John W. Smith
Ector County District Attorney
300 North Grant, Room 305
Odessa, Texas 79761

Opinion No. GA-0335

Re: Whether a business that holds an on-premises alcoholic beverage permit may host a poker tournament (RQ-0305-GA)

Dear Mr. Smith:

You ask whether a business that holds an on-premises alcoholic beverage permit may host a poker tournament under two specific fact scenarios.[1] The first situation you describe as follows:

> Persons of an unknown number would pay a nominal fee to enter the "Texas Hold-Em" Tournament. The fee is probably negotiable but would be in the range of Twenty Five to Fifty Dollars ($25 to $50) per person. A "Texas Hold-Em" Poker Tournament would ensue with the registered players participating at various tables and using chips that although have a money denomination actually represent no money changing hands. (For the Fifty Dollar ($50.00) buy in the player would receive One Thousand Dollars ($1,000.00) in chips that have no actual cash value.) As the Tournament progresses the players that accumulate the most chips will by skill force out the less skilled players and at the end of the evening the winners at each table will accumulate and play a final table at which a certain number of prize places will be paid by the establishment to those persons winning the Tournament. The house intends to take no cut of the entry fee of each player and the entire prize pool that is generated by the number of players times their entry fee will be paid back to the winner players

---

[1]Letter from Honorable John W. Smith, Ector County District Attorney, to Honorable Greg Abbott, Texas Attorney General (Dec. 17, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter]; *see also* Supplemental Letter from Honorable John W. Smith, Ector County District Attorney, to Honorable Greg Abbott, Texas Attorney General at 2 (Dec. 30, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Supplemental Request Letter].

at the end of the night either in a first through third or first through fifth or first through eighth combination depending on the number of players.

Request Letter, *supra* note 1, at 2.

Section 47.04 creates the offense of "keeping a gambling place." That statute provides, in relevant part:

> (a)  A person commits an offense if he knowingly uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used.

TEX. PEN. CODE ANN. § 47.04(a) (Vernon 2003). "Gambling place" is defined as "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is the making or settling of bets, bookmaking, or the conducting of a lottery or the playing of gambling devices." *Id.* § 47.01(3). "Bet" is defined in section 47.01 as "an agreement to win or lose something of value solely or partially by chance." *Id.* § 47.01(1).

The statutory definition of "bet" as a noun is inartfully drafted, in that it does not directly state that a person must risk something of value in order to fall within the definition.[2] In *Odle v. State*, 139 S.W.2d 595 (Tex. Crim. App. 1940), however, the court approved the following language: "The legal meaning of the term 'bet' is the mutual agreement and tender of a gift of something valuable, which is to belong to one of the contending parties, according to the result of a trial of chance, or skill, or both combined." *Id.* at 597. Furthermore, in Attorney General Opinion JM-412, this office concluded that a "casino nite" held by a school district in which "no person gives or promises to give anything of value in order to participate lacks the element of consideration that is essential to the offense of gambling under section 47.02 of the Texas Penal Code." Tex. Att'y Gen. Op. No. JM-412 (1985) at 2. The opinion declared that "[t]he legal meaning of 'bet' involves not only the ultimate winning of something of value but the initial giving or agreement to give something of value." *Id.* Thus, a "bet," for purposes of section 47.01(3) of the Penal Code, which defines "gambling place," *inter alia*, as a place for the making or settling of bets, requires the elements of prize and consideration. Under the facts you have described, a participant in the referenced poker tournament would be required to risk a sum of money ranging from $25 to $50 for the opportunity to win a prize that necessarily includes part of the money the participant has paid. It seems clear that,

---

[2]By contrast, a New Jersey statute defines "gambling" to mean "*staking or risking something of value* upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." *See* N.J. STAT. ANN. § 2C:37-1(b) (West 1995) (emphasis added); Brief from Charles E. Humphrey, Jr., to Honorable Greg Abbott, Texas Attorney General (Jan. 25, 2005) (on file with Opinion Committee) (*Glick v. MTV Networks*, 796 F. Supp. 743, 746 (S.D.N.Y. 1992) attached which quotes the New Jersey statute) (attachment to Brief).

under such circumstances, the participant "plays and bets for money or other thing of value." TEX. PEN. CODE ANN. § 47.02(a)(3) (Vernon 2003).[3]

In order to constitute a "bet" under section 47.01(1), an agreement "to win or lose something of value" must also possess the element of chance, either "solely or partially." *Id.* § 47.01(1); *see also Odle*, 139 S.W.2d at 597 (legal meaning of term "bet" is the mutual agreement and tender of a gift of something valuable, which is to belong to one of the contending parties, *according to the result of chance or skill or both combined*). Thus, we must determine whether "Texas-Hold-Em," a form of poker, wholly or partially embraces the element of chance. In a recent opinion, the Attorney General of South Carolina considered the issue of whether "the game of poker constitutes a game of skill or one of chance." *See* Op. S.C. Att'y Gen. (Jan. 22, 2004), 2004 WL 235411, at *2. In concluding that the element of chance predominates in poker, the opinion acknowledged that "[w]hile there is a split of authority, several courts have concluded that a live poker game is a game of chance rather than skill." *Id. See, e.g., Indoor Recreation Enters., Inc. v. Douglas*, 235 N.W.2d 398, 400 (Neb. 1975) (evidence supported trial court's conclusion that poker is predominantly a game of chance); *State v. Taylor*, 16 S.E. 168 (N.C. 1892) ("It is a matter of universal knowledge that no game played with the ordinary playing cards is unattended with risk, whatever may be the skill, experience, or intelligence of the gamesters engaged in it.").

On the other hand, a number of state courts have held that poker is not predominantly a game of chance. *See, e.g., Ginsberg v. Centennial Turf Club, Inc.*, 251 P.2d 926, 929 (Colo. 1952); *State ex rel. Evans v. Bhd. of Friends*, 247 P.2d 787, 797 (Wash. 1952); *State v. Coats*, 74 P.2d 1102, 1106 (Ore. 1938). In Texas, several attorney general opinions have declared that a particular game is a "game of chance" if chance predominates over skill. *See* Tex. Att'y Gen. Op. Nos. JM-1267 (1990), C-619 (1966), WW-222 (1957), V-1483 (1952), V-544 (1948), V-238 (1947). *See also Adams v. Antonio*, 88 S.W.2d 503, 505 (Tex. Civ. App.–Waco 1935, writ ref'd) (dicta to the effect that gaming statute was violated in instance in which chance predominates over skill). Attorney General Opinion JM-1267 stated that "[w]hether any of the gaming activities about which you ask [including poker] involves the dominating element of skill, as opposed to chance, is a question of fact that cannot be resolved in the opinion process." Tex. Att'y Gen. Op. No. JM-1267 (1990) at 6.

In our view, however, the plain language of section 47.01(1) of the Penal Code renders irrelevant the matter of whether poker is predominantly a game of chance or skill. As we have indicated, the word "bet" is defined as "an agreement to win or lose something of value *solely or*

---

[3]It is a "defense to prosecution under this section" that:

    (1) the actor engaged in gambling *in a private place*;

    (2) no person received any economic benefit other than personal winnings; and

    (3) except for the advantage of skill or luck, the risks of losing and the chances of winning were the same for all participants.

TEX. PEN. CODE ANN. § 47.02(b)(1)-(3) (Vernon 2003) (emphasis added).

*partially by chance.*" TEX. PEN. CODE ANN. § 47.01(1) (Vernon 2003) (emphasis added). If an element of chance is involved in a particular game, it is embraced within the definition of "bet." We have not found any authority holding that there is *no* element of chance involved in a game played with cards, including poker, other than the chance attendant upon every human endeavor.

Moreover, section 47.01 provides that the term "bet" does *not* include, *inter alia*:

> (B) an offer of a prize, award, or compensation to the actual contestants in a bona fide contest for the determination of skill, speed, strength, or endurance or to the owners of animals, vehicles, watercraft, or aircraft entered in a contest.

*Id.* § 47.01(1)(B). In *People v. Mitchell*, an Illinois court examined a statute that contained language virtually identical to that quoted above. The court declared:

> In our opinion, the poker game played under the circumstances of the instant case [hold 'em poker] is precisely the type of "game of chance or skill" which falls squarely within the plain meaning of the activity proscribed under subsection (a)(1). Although there was some testimony tending to indicate that the poker games involved some degree of skill, we do not find the jury's implicit conclusion that they were not "bona fide contests for the determination of skill" so improbable as to warrant a reversal. Both direct and circumstantial evidence was introduced to support the conclusion that the games, in fact, required a combination of skill and chance, and that they were definitely not the type of "bona fide contests" excepted from subsection (a)(1).

*People v. Mitchell*, 444 N.E.2d 1153, 1155 (Ill. App. 1983). We agree with this court that a bet in a game of poker, of whatever type, is not excepted from the definition of "bet" in section 47.01(1) of the Penal Code on the ground that it is a "bona fide contest for the determination of skill." TEX. PEN. CODE ANN. § 47.01(1)(B) (Vernon 2003). In addition, because at least some element of chance is present in a game of poker, a "bet" in such a game constitutes an agreement to win a thing of value at least "partially by chance." *Id.* § 47.01(1).

Under the scenario you have described, then, a bar or restaurant that hosts a "Texas Hold-Em" poker tournament would violate the prohibition against "keeping a gambling place." *See* Request Letter, *supra* note 1, at 2; TEX. PEN. CODE ANN. § 47.04(a) (Vernon 2003). Chapter 47 of the Penal Code does not contain any specific reference to a person or company that holds an on-premises alcoholic beverage permit. But pursuant to Rule 35.31 promulgated by the Alcoholic Beverage Commission (the "Commission"), a permittee contravenes section 11.61(b)(7) or section 61.71(a)(17) of the Alcoholic Beverage Code if he or she violates or negligently allows another to violate "any gambling offense described in Chapter 47 of the Texas Penal Code" on the licensed

premises.[4] *See* 16 TEX. ADMIN. CODE § 35.31(b)(14) (2004). Thus, committing the offense of "keeping a gambling place" permits the Commission, after notice and hearing, to suspend or cancel the license of a permittee pursuant to either section 11.61(b) or section 61.71(a) of the Alcoholic Beverage Code. The fact that the permittee does not profit directly from the gambling is irrelevant to the question of whether the permittee has violated either section 47.04(a) of the Penal Code or the Commission's Rule 35.31. In specific answer to your first question, a holder of an on-premises alcoholic beverage permit may not, without violating both section 47.04(a) of the Penal Code and Rule 35.31 of the Alcoholic Beverage Commission, host a poker tournament in which participants risk money or any other thing of value for the opportunity to win a prize.

You describe the second scenario in the following terms:

> [A] question has arisen about retailers, bars and restaurants who hold Texas Hold-'Em Poker tournaments. In these tournaments, consumers do not pay to play and do not risk any of their own money at any time during the tournament. Chips are assigned point values and those players with the most points at the end of the tournament are provided prizes, anywhere from t-shirts to gift certificates. In progressive tournaments, winners are awarded a chance to play at the next level tournament with an opportunity to win even greater prizes such as vacations to Las Vegas, Nevada, and entry into World of Poker Tour events ($10,000 value). Since participants are not betting or risking their money or anything of value during the game and nothing is lost by participants, do these tournaments constitute gambling under Texas Penal Code Ann. Sec. 47.02?

Supplemental Request Letter, *supra* note 1, at 2.

---

[4]Section 11.61(b) of the Alcoholic Beverage Code provides that "[t]he [Alcoholic Beverage] commission or administrator may suspend for not more than 60 days or cancel an original or renewal permit if it is found, after notice and hearing, that any of the following is true:

> . . . .

> (7) the place or manner in which the permittee conducts his business warrants the cancellation or suspension of the permit based on the general welfare, health, peace, morals, and safety of the people and on the public sense of decency[.]

TEX. ALCO. BEV. CODE ANN. § 11.61(b) (Vernon Supp. 2004-05). Likewise, section 61.71(a) provides that "[t]he commission or administrator may suspend for not more than 60 days or cancel an original or renewal retail dealer's on- or off-premise license if it is found, after notice and hearing, that the licensee:

> . . . .

> (17) conducted his business in a place or manner which warrants the cancellation or suspension of the license based on the general welfare, health, peace, morals, safety, and sense of decency of the people[.]

*Id.* § 61.71(a).

Again, we note that section 47.04(a) of the Penal Code provides, in relevant part, that a person commits an offense if the person knowingly uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used. *See* TEX. PEN. CODE ANN. § 47.04(a) (Vernon 2003). Under the facts you have presented in this second scenario, "consumers do not pay to play and do not risk any of their own money at any time during the tournament." Supplemental Request Letter, *supra* note 1, at 2. Pursuant to the test promulgated by the court in *Odle*, this lack of "tender of a gift of something valuable" means that no "bet" has occurred. *Odle*, 139 S.W.2d at 597. In such case, the property does not meet the statutory definition of "gambling place." As we have indicated, a "gambling place" is property used in "the making or settling of bets." TEX. PEN. CODE ANN. § 47.01(3) (Vernon 2003). As a result, the establishment does not commit an offense under section 47.04 of the Penal Code.

In specific answer to your second question, a holder of an on-premises alcoholic beverage permit may, without violating both section 47.04(a) of the Penal Code and, as a corollary, Rule 35.31 of the Alcoholic Beverage Commission, host a poker tournament in which participants do not risk money or any other thing of value for the opportunity to win a prize. *See id* § 47.04(a); 16 TEX. ADMIN. CODE § 35.31(b)(14) (2004).

## S U M M A R Y

A holder of an on-premises alcoholic beverage permit may not, without violating both section 47.04(a) of the Penal Code and Rule 35.31 of the Alcoholic Beverage Commission, host a poker tournament in which participants risk money or any other thing of value for the opportunity to win a prize. A holder of an on-premises alcoholic beverage permit may, without violating either section 47.04(a) of the Penal Code or Rule 35.31 of the Alcoholic Beverage Commission, host a poker tournament in which participants do not risk money or any other thing of value for the opportunity to win a prize.

Yours very truly,

GREG ABBOTT
Attorney General of Texas


BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee